**HINSON v. PLOWDEN.**
**Civ. A. 1012.**

United States District Court
W. D. South Carolina,
Greenville Division.

July 28, 1950.

Hinson, Traxler & Hamer, Greenville, S. C., for plaintiff.

Mann & Arnold, Greenville, S. C., for defendant.

WYCHE, Chief Judge.

This action was originally commenced in this court by the Aetna Life Insurance Company as plaintiff against Patricia Louise Hinson Plowden and O. H. Hinson. The proceeding as originally instituted was an interpleader action wherein the Aetna Life Insurance Company deposited in the Registry of this court the sum of $3,092, admittedly due and payable to Patricia Louise Hinson Plowden on a single premium policy which matured on April 15, 1949, which policy was in the possession of her stepfather O. H. Hinson, who refused to surrender the same. The plaintiff insurance company in its complaint named Mrs. Plowden, a resident of the State of South Carolina, and O. H. Hinson, a resident of the State of Florida, as parties defendant and prayed that it be determined in this proceeding which of the defendants was entitled to the sum payable under its insurance policy.

By order dated October 3, 1949, I directed the issuance of summons and granted a temporary restraining order and a rule to show cause why same should not be made permanent, and the plaintiff discharged from further liability under the policy.

In due course, Patricia Louise Hinson Plowden, filed her answer to the interpleader proceeding asserting her claim as beneficiary to the entire proceeds paid into the Registry of this court and expressly denied that O. H. Hinson had any right of interest in the same. O. H. Hinson, the stepfather of Mrs. Plowden, filed his answer admitting that he had possession of the policy of insurance and that he refused to surrender it to the plaintiff for payment. He then set up a cross-claim against his stepdaughter, Mrs. Plowden, alleging that he had "loaned or advanced to Patricia Louise Plowden the sum of $5,059.53 for necessities, including maintenance, support, hospitalization, medical bills and a suitable education * * *; and it was well understood by the said Patricia Louise Plowden that said sum of money was loaned to her and was to be repaid from the proceeds of said policies, which this Defendant held." In his answer, the stepfather, O. H. Hinson, relied on a "loan agreement" with the defendant as the basis for his claim of reimbursement in part from the proceeds in the Registry of this court. The stepdaughter, Patricia Louise Hinson Plowden, then filed proper motion to dismiss the cross-claim and for judgment on the pleadings and reserving her rights thereunder filed her answer to the cross-claim on her part against her then co-defendant O. H. Hinson, by which answer she denied any loan agreement or credit arrangement whatsoever and denied that she was indebted to her stepfather in any sum. She then set up a cross-claim for

15 3/4 shares of stock in the Opalescent Glass Company of Kokomo, Indiana, which stock stood in her name and was in the possession of her stepfather and represented one-half of the stock of which her mother died seized and possessed on February 12, 1946, and she demanded that her stepfather surrender the stock certificate to her "and to account to her for the dividends". No answer or reply to this cross-claim by Mrs. Plowden was filed by O. H. Hinson. However, his attorneys on November 22, 1949, filed notice demanding a jury trial on this cross-claim.

On February 20, 1950, the matter came before me at a pretrial conference and by agreement between the attorneys representing the parties, an order was passed referring the matter of Walter H. Hood, Esq., as Special Master, to hold a reference or references, and to take the testimony and report his findings of fact to this court with all convenient speed. Further, it was ordered that since the Aetna had paid the money into the Registry of this court that O. H. Hinson be aligned and denominated the plaintiff, and that Patricia Louise Hinson Plowden be named and designated as the defendant in this action. All questions of law were reserved to the court for final decision. By consent order dated April 4, 1950, the Aetna Life Insurance Company was dismissed from the action, and it has since been continued under the above title between O. H. Hinson as plaintiff, and Patricia Louise Hinson Plowden as defendant.

The Special Master held two references at which he took the testimony and thereafter filed his report dated May 5, 1950, wherein he finds against the contentions of the plaintiff on all of the material facts. Plaintiff duly filed exceptions to this report seven in number, and the cause is now before me upon such exceptions.

I have carefully considered the entire record and have been materially assisted by the excellent report of the Special Master and the able arguments and comprehensive briefs of counsel for the parties. In passing on this matter I must keep in mind Rule 53(e) (2) of the Rules of Civil Procedure for the United States District Courts 28 U.S.C.A., which reads in part as follows: "In an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous." I cannot say that the findings of fact of the Special Master are clearly erroneous. On the contrary his findings are amply substantiated by the testimony and the exhibits offered by the parties. One factor which it is proper to mention and one which always should be given consideration is that the Special Master had an opportunity to see and hear the parties and the witnesses. My conclusion is that the Report of the Special Master should be confirmed in every respect, and

It Is So Ordered.

### Conclusions of Law.

The primary question in this case is whether or not the plaintiff stood in loco parentis to the defendant. When the defendant was about two and one-half years of age her mother married the plaintiff. The defendant was originally christened Patricia Louise Ellis. She never knew her father, and in fact she was in her early teens when she first learned that plaintiff was not her real father and she had reached her majority before she learned that she, contrary to her understanding, had not been legally adopted by the plaintiff.

Whether or not the plaintiff stood in loco parentis to the defendant depends upon the intent of the parties to a large extent and the facts of each case must be carefully analyzed. In other words, the facts control the law. The plaintiff admittedly was the stepfather of the defendant, but this relationship alone is not sufficient to hold that the parties stand in loco parentis. An examination of the record shows many facts and circumstances clearly indicating that up to April, 1948, the relationship between the parties hereto was that of parent and child. The plaintiff was an exacting father and was greatly interested in the education and welfare of the defendant. He exercised parental control. There is no attempt by the plaintiff to claim or charge for any maintenance from the time the defendant entered plaintiff's home in the spring of 1930 to 1942. It was only after

the defendant left the home of her mother and stepfather in 1942 to go away to boarding school that the plaintiff attempts to make any charge against the defendant. This to me indicates that up until 1942 the plaintiff looked upon and treated the defendant as his child and thereafter even subsequent to her mother's death, the plaintiff and the defendant looked upon and treated each other as father and daughter in their visits and other relationships. This is borne out not only by the testimony of the parties, but also by the last written communications by the plaintiff to the defendant.

I, therefore, must conclude as a matter of law that the relationship of father and daughter existed between the parties and that the plaintiff stood in loco parentis to the defendant. Wood v. United States, D.C., 74 F.Supp. 732.

I must further conclude as a matter of law that there was no loan agreement, assignment or pledge or agreement to pledge between the parties with reference to the monies or properties involved in this proceeding. Plaintiff contends that there was an agreement by the defendant some time in the year 1942, before she went to boarding school and a subsequent agreement in the summer of 1945, before she entered Furman University at Greenville, South Carolina, whereby she agreed to pay the plaintiff for the expense of her education and as a security therefor to pledge or leave with the plaintiff the two policies of insurance, one with the Jefferson Standard Life Insurance Company and the other with Aetna Life Insurance Company. The plaintiff is rather indefinite as to the exact nature of the alleged agreement. In other words, the plaintiff at times refers to it as a loan agreement; a pledge agreement; and as a plain debt owing by the defendant to the plaintiff. The plaintiff at times during the course of this litigation contended that he had a lien on the policy issued by the Aetna Life or the proceeds therefrom as security for the amount due him.

Plaintiff's contentions are somewhat contradictory since he alleges that he loaned this money "to be repaid from the proceeds of said policies" and then indicates in his testimony that the defendant did not know of the existence of either policy of insurance until the Christmas Holidays of the year 1947, when the defendant had returned from Furman University to spend the holidays with the plaintiff at his home in Florida. Defendant's mother had died in February, 1946. The plaintiff testified that the first time defendant knew of the existence of her policies of insurance was when he showed them to her during the Christmas Season of the year 1947, and this testimony was corroborated by the defendant. The plaintiff attempts to rely on a loan agreement in 1942 and 1945, but there is no evidence that defendant's insurance policies were pledged at any time to the plaintiff as security for the alleged loan. The law will not support a lien or a pledge under such a set of facts. An essential element of a pledge is the transfer of property to be held as security, and there must be a transfer or a delivery of the property pledged. In the case of Peurifoy, Rec'r. v. Loyal et al., 154 S.C. 267, 151 S.E. 579, it was held that there must be an expression of mutual assent or acceptance to constitute a valid pledge of securities by their owner to another. The admitted facts show that both policies of insurance remained in the possession of the plaintiff or the plaintiff and his wife to the date of her death in February, 1946, and thereafter in the exclusive possession of the plaintiff until the Jefferson Standard Life Insurance Company policy was surrendered in March, 1948, for payment. There could have been no delivery or transfer by the defendant. She had never had either policy in her possession and she did not know of the existence of either policy until December of 1947. The plaintiff did not reach her majority until March 15, 1948. Any contention that the policies were assigned or pledged prior to the time that the owner knew of their existence and content could not be sustained. The plaintiff did not attempt to establish any assignment or pledge, contract or agreement made subsequent to the summer of 1945. It follows from the above conclusions that the funds from the

insurance policy in question belonged to the defendant and that there is no evidence to sustain plaintiff's claim against the defendant for any sum.

Plaintiff excepts to the Special Master's finding that defendant's mother paid a substantial portion of defendant's college expenses. I cannot sustain this exception as there is evidence to support this finding of fact by the Special Master, and this question does not materially affect the issues in the case after the finding herein made that the plaintiff stood in loco parentis to the defendant. It, therefore, follows that the defendant is entitled to the remaining sum of $2,942, on deposit in the Registry of this Court.

██ The plaintiff, by his seventh exception, says that the Special Master erred in finding that the 15 3/4 shares of the glass stock and a half interest in a diamond ring and the $25 Defense Bond were the property of the defendant. This stock stood in the name of plaintiff's wife until her death February, 1946. Plaintiff's wife died intestate, and he admitted that he was entitled to one-half of the glass stock which he received amounting to 15 3/4 shares and that the defendant, as a daughter of his wife, was entitled to the remaining 15 3/4 shares, and he had the stock so divided. He had the necessary papers prepared, and had 15 3/4 shares transferred to his name and 15 3/4 shares transferred to the name of the defendant. This stock transferred to the defendant was not the subject of any pledge, assignment, lien or transfer in favor of the plaintiff. As previously mentioned, the agreements which the plaintiff testified about were claimed to have been made in 1942 and 1945. Under the facts set forth in the record, the Special Master could not have held otherwise, and likewise I conclude as a matter of law that the 15 3/4 shares of Opalescent Glass Company stock standing in the name of the defendant is the property of the defendant.

With reference to the diamond ring and the Defense Bond, the defendant did not know of the existence of the latter until the hearings before the Special Master. She testified that she did know that her mother had the diamond ring, and she had hoped to receive this ring for sentimental reasons and because it was the only personal effect of any value or permanency left by her mother. The plaintiff testified that he at some time intended to give this ring to the defendant, but at the time of the hearings had not done so. The Defense Bond stood in the name of the defendant or her mother, and became the property of the defendant as survivor.

Plaintiff contends that these personal properties were subject to a lien and held by him in the nature of a pledge as security to his alleged indebtedness and that he was entitled to hold the same until his claim was paid in full. He had no lien on these properties and had no right to retain them as security for any alleged claim or indebtedness, and there is no proof to sustain his contention in this respect. The $25 Defense Bond is the property of the defendant, and she has a one-half undivided interest in the diamond ring held by the plaintiff which has a value of from $200, to $400, according to plaintiff's testimony.

It was agreed by the attorneys representing the parties that the Special Master's fee would be $100, and each party paid one-half thereof. Also, the parties paid in equal shares the stenographic costs of Miriam S. Henry totalling $127, and they likewise paid in equal shares the stenographic costs of Elizabeth A. Reed totalling $121, for taking and transcribing testimony. Each party therefore paid $174, each on account of the above expenses, and I find that these charges are reasonable and approve the same.

It is, therefore, Ordered, That the Special Master's Report be approved and confirmed and that plaintiff's exceptions thereto be overruled and that the Clerk of this Court pay over to the defendant or her attorneys the amount now on deposit in the Registry of this court, to wit: $2,942.

While a review of the record does not disclose that there was any agreement about taxing costs for the fees of the Special Master or the Court Reporter, when I suggested that the matter be referred to a Special Master I had in mind that each

side would pay half of the costs of the reference, without taxing such amounts against the losing party. In any event, it is my view that the one-half of the costs of reference paid by the defendant should not be taxed against the plaintiff as costs, and

It Is So Ordered.

Defendant's other taxable costs should be taxed against the plaintiff.

Further It Is Ordered, That the plaintiff be and he is hereby directed forthwith to deliver to the defendant or her attorneys the certificate issued to her for the 15 3/4 shares of stock in the Opalescent Glass Company of Kokomo, Indiana, and also the $25 face value Defense Bond.

It Is Further Ordered, That the plaintiff forthwith deliver to the Clerk of this Court the diamond ring formerly the property of defendant's mother, Annagrace Hoss Ellis Hinson, and that the parties hereto be given an opportunity to agree on the value of the ring and a method of disposing of the same with one-half of such value going to the plaintiff, and the other one-half to the defendant. If the parties are unable to agree within ten days from the filing of this Order, then either party will have the right to apply, on notice, to this Court for an order providing for the method of disposing of the ring and dividing the proceeds