ILLINOIS HEALTH CARE ASSOCIATION *et al.*, Plaintiffs-Appellants, v. ROBERT W. WRIGHT, as Director of the Department of Public Aid, Defendant-Appellee.

First District (4th Division)    No. 1—93—4339

Opinion filed December 1, 1994.—Rehearing denied January 5, 1995.

---

[1]Justice Johnson concurred in the disposition of this appeal before his retirement.

James J. Casey, Dorothy Voss Ward, Kathleen M. O'Laughlin, and Pamela L. Peters, all of Keck, Mahin & Cate, of Chicago, for appellants.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and James C. O'Connell and David Adler, Special Assistant Attorneys General, of counsel), for appellee.

JUSTICE THEIS delivered the opinion of the court:

We are presented here with a challenge to the State's system of reimbursing Medicaid costs incurred by nursing homes. In this case, the plaintiffs, Illinois Health Care Association (IHCA) and Heartland Manor Nursing Center, Inc., appeal the trial court's decision to direct a finding in favor of the defendant Robert Wright, in his official capacity as Director of the Illinois Department of Public Aid (IDPA). Basically, three issues are raised in this appeal: (1) whether the plaintiffs have established a *prima facie* case under the Illinois Public Aid Code (305 ILCS 5/1—1 *et seq.* (West 1992)); (2) whether Carl Lindner should have been permitted to testify as an expert witness; and (3) whether as a matter of law the plaintiffs must demonstrate efficiency and economy of their nursing home operations as part of a *prima facie* case alleging violations of the Illinois Prompt Payment Act (30 ILCS 540/0.01 *et seq.* (West 1992)). Upon consideration of the arguments presented in this case, we now reverse the decision of the lower court and remand this case for further proceedings consistent with this opinion.

## STATUTORY AND FACTUAL BACKGROUND

"Medicaid is a cooperative federal-state program through which the Federal Government provides financial assistance to States so that they may furnish medical care to needy individuals." (*Wilder v. Virginia Hospital Association* (1990), 496 U.S. 498, 502, 110 L. Ed. 2d

455, 462, 110 S. Ct. 2510, 2513.) This includes providing funding for long-term care in nursing facilities. (*Illinois Health Care Association v. Bradley* (7th Cir. 1993), 983 F.2d 1460, 1461.) States which elect to participate in the Medicaid program must comply with the provisions of the Medicaid Act (42 U.S.C.A. §§ 1396 through 1396s (West Supp. 1994)) and the applicable regulations promulgated by the Secretary of Health and Human Services. *Wilder*, 496 U.S. at 502, 110 L. Ed. 2d at 462, 110 S. Ct. at 2513.

The original Medicaid system was adopted in 1965. (*Illinois Health Care Association v. Bradley* (N.D. Ill. 1991), 776 F. Supp. 411, 414.) When the Medicaid system was originally adopted, States were reimbursed for "reasonable cost" associated with running a nursing home. (*Wilder*, 496 U.S. at 505, 110 L. Ed. 2d at 464, 110 S. Ct. at 2515; *Illinois Health Care Association v. Bradley* (N.D. Ill. 1991), 776 F. Supp. 411, 414.) This ultimately meant that States received from the Federal government their full actual costs of providing services. (*Illinois Health Care Association v. Suter* (N.D. Ill. 1989), 719 F. Supp. 1419, 1420.) However, Congress eventually came to realize that this system of reimbursement was " 'inherently inflationary and contain[ed] no incentives for efficient performance.' [Citations.]" (*Illinois Health Care Association v. Suter*, 719 F. Supp. at 1420.) The Medicaid Act was consequently amended and the "reasonable cost" approach was replaced by the Boren Amendment, which provides for reimbursement of costs incurred by a nursing facility which is "efficiently and economically operated." 42 U.S.C.A. § 1396a(a)(13)(A) (West Supp. 1994).

Under the Boren Amendment, the State must make findings and give assurances to the Federal government that the reimbursement rates are reasonable and adequate to meet the costs of an economic and efficient nursing facility. (*Wilder*, 496 U.S. at 507, 110 L. Ed. 2d at 465-66, 110 S. Ct. at 2516.) The Boren Amendment can therefore be violated both procedurally and substantively. (*Wilder*, 496 U.S. at 510, 110 L. Ed. 2d at 467, 110 S. Ct. at 2517.) The procedural provisions entitle providers to enforce the State's obligation to make findings and give assurances. The substantive provision entitles providers to receive reasonable and adequate rates. See, *e.g.*, *New Jersey Association of Health Care Facilities v. Gibbs* (D.N.J. 1993), 838 F. Supp. 881, 893.

Illinois is a participant in the Medicaid system and, consequently, reimburses nursing homes for the costs of the services which they provide to Medicaid patients. The Illinois statute controlling the reimbursement of costs, which was passed several years before the Boren Amendment became law, reads as follows:

"This amendatory Act establishes certain conditions for the Department of Public Aid in instituting rates for the care of recipients of medical assistance in skilled nursing facilities and intermediate care facilities. Such conditions shall assure a method under which the payment for skilled nursing and intermediate care services, provided to recipients under the Medical Assistance Program shall be on a reasonable cost related basis, which is prospectively determined annually by the Department of Public Aid. ***
***

The resultant total rate for a specified type of service shall be an amount which shall have been determined to be adequate to reimburse allowable costs of a facility that is economically and efficiently operated." 305 ILCS 5/5—5.3 (West 1992).

Before we begin our discussion of the issues raised in this appeal, we find it helpful to review the Federal litigation which arose between these parties concerning the reimbursement of Medicaid rates.

## THE FEDERAL LITIGATION

IHCA and Heartland Nursing initiated an action in the Federal court in a similar challenge to the validity of Illinois' Medicaid reimbursement plan for nursing homes. In the Federal action, the plaintiffs charged that the Illinois Medicaid reimbursement system was in violation of the Boren Amendment and sought only a declaratory judgment. *Illinois Health Care Association v. Bradley* (N.D. Ill. 1991), 776 F. Supp. 411, *aff'd* (7th Cir. 1993), 983 F.2d 1460.

## THE DECISION OF THE DISTRICT COURT

The district court began its analysis by considering whether Illinois had violated the procedural requirements of the Boren Amendment. It noted that the regulations of the Secretary of Health and Human Services recognize that the Boren Amendment envisions a two-step process, where the State must make both findings and give assurances that its rates are adequate. (See 776 F. Supp. at 417-18.) The court then noted that, when the State undertakes this process, it must identify the "objective benchmark" of an economic and efficient facility and then evaluate the reasonableness of its rates against this benchmark. (776 F. Supp. at 418.) The court further explained that, pursuant to case law, the State must make findings which establish a nexus between the costs of operating an economic and efficient nursing facility and the reasonableness of the reimbursement rates under the State plan. 776 F. Supp. at 418.

Utilizing this reasoning, the district court concluded that the Illinois Department of Public Aid (IDPA) had failed to make the

findings required by the Boren Amendment. The court found that IDPA "had not taken the first step in an adequate findings process—identifying the 'objective benchmark' of an efficiently and economically operated facility." (776 F. Supp. at 419.) Because IDPA had failed to make adequate findings, the court found that the Illinois plan violated the Boren Amendment and it invalidated the State's Medicaid reimbursement plan. 776 F. Supp. at 422.

The court specifically declined to address the issue of whether the Illinois plan violated the substantive requirements of the Boren Amendment. The court concluded that the record before it did not contain enough facts for the court to make a determination of whether the State's rates were reasonable and adequate. However, it concluded, "[w]hen Illinois returns to its procedural task (as it must), it must also meet the substantive demands of the Boren Amendment." 776 F. Supp. at 423.

## THE DECISION OF THE COURT OF APPEALS

The 7th Circuit Court of Appeals affirmed the decision of the district court. (*Illinois Health Care Association v. Bradley* (7th Cir. 1993), 983 F.2d 1460.) The court of appeals noted that the parties had not challenged the lower court's decision with respect to the substantive requirements of the Act and therefore it confined its analysis to a discussion of the procedural aspects of compliance with the Boren Amendment. On appeal, IDPA admitted that it had not identified specific nursing homes that were economically and efficiently operated but it argued that this identification was implicit in the rate-setting methodology which had been employed. (983 F.2d at 1465.) The court of appeals rejected this argument.

## THE STATE LITIGATION

In 1989, the plaintiffs, IHCA and Heartland Manor Nursing Center, initiated this action by filing a three-count complaint in the circuit court. In count I, the plaintiffs alleged that the reimbursement rates for Medicaid patients were inadequate and charged that IDPA had violated the Illinois Public Aid Code. The plaintiffs asked the court to order IDPA to conduct a time and motion study to determine the actual time required to perform each component of nursing care and to design a system that adequately compensates nursing homes in compliance with payment standards. The plaintiffs also requested that the court "[a]ward plaintiffs damages for the period from 1985 to the present in an amount that the court deems proper after [a] hearing." Employing the terminology established by Federal case law, then, the plaintiffs pursue both procedural and substantive claims.

Count II of the complaint alleged that IDPA violated provisions of the Administrative Procedures Act (5 ILCS 100/1—1 *et seq.* (West 1992)). On this count, the trial court granted the plaintiffs' motion for summary judgment. The disposition of this count is not challenged in this appeal. Count III of the complaint alleged that IDPA's billing system violated the Prompt Payment Act.

The trial in this case had been stayed pending the outcome of Federal litigation between the same parties and it consequently did not commence until August 9, 1993. At trial, the plaintiffs introduced a number of exhibits and witnesses to support their theory that the State's reimbursement rate has historically been inadequate. After the plaintiffs had presented their case, the defendant moved for a directed finding. The trial court concluded that an element of the plaintiffs' *prima facie* case was identifying an economically and efficiently operated nursing facility. Because the plaintiffs had failed to do this, the court directed a finding as to counts I and III. The plaintiffs appeal this decision.

## DISCUSSION

■ Pursuant to section 2—1110 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1110), the defendant may move for a directed finding at the end of the plaintiff's case in any matter tried without a jury. (*Davis v. John Crane, Inc.* (1994), 261 Ill. App. 3d 419, 427, 633 N.E.2d 929, 935.) When ruling on a motion for a directed finding, the trial court must employ a two-step analysis. First, the trial court must determine whether the plaintiffs have established each element of a *prima facie* case. If the trial court finds that the plaintiffs have not established a *prima facie* case, then the trial court should direct a finding in favor of the defendant. If the trial court finds that the plaintiffs have established a *prima facie* case, the court must then proceed to the second step of the analysis. The court should weigh all the evidence, assess the credibility of the witnesses, and generally consider the weight and quality of all the evidence. *In re Estate of Kirk* (1993), 242 Ill. App. 3d 68, 73, 611 N.E.2d 537, 540.

## I

The first issue we must address is whether the plaintiffs must demonstrate the efficiency and economy of their nursing home operations as part of a *prima facie* case alleging violations of the Illinois Public Aid Code in order to withstand a motion for a directed finding.

In this matter, the trial court concluded that the plaintiffs had

not established one element of their *prima facie* case and therefore directed a finding in favor of the defendants. Because we conclude that the trial court erred in determining that an element of the plaintiffs' *prima facie* case is to show that they are economically and efficiently operated, we reverse the decision of the trial court and remand this case so that the trial court can conduct further proceedings consistent with this opinion. See, *e.g., In re Estate of Ragen* (1979), 79 Ill. App. 3d 8, 14, 398 N.E.2d 198, 203.

■ To establish a *prima facie* case, the plaintiffs must present evidence to support each element of a cause of action. (*Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 154-55, 407 N.E.2d 43, 45; *Memory Gardens Cemetery, Inc. v. Village of Arlington Heights* (1993), 250 Ill. App. 3d 553, 559, 621 N.E.2d 107, 111-12.) "A cause of action consists of a right belonging to the plaintiff and a violation of that right by a wrongful act or omission by the defendant for which the law gives a remedy." (*Pfeiffer v. William Wrigley Jr. Co.* (1985), 139 Ill. App. 3d 320, 322, 484 N.E.2d 1187, 1189.) On count I, the cause of action arises from the Illinois Public Aid Code. Therefore, for the plaintiffs to establish their *prima facie* case, they must present some evidence to support every element of the cause of action arising under the Illinois Public Aid Code. 305 ILCS 5/5—1 (West 1992).

■ We thus find it necessary to construe the meaning of the Illinois Public Aid Code. Section 5—5.3 of the Illinois Public Aid Code uses the language, the "rate *** shall have been determined to be adequate." (305 ILCS 5/5—5.3 (West 1992).) Because the statute relies upon the use of the passive voice, the language of the statute does not reveal which party is intended to shoulder the obligation of determining an adequate rate. However, later provisions of the Public Aid Code indicate that the reimbursement rates established by the State pursuant to this statute must be consistent with Federal law. (305 ILCS 5/5—5.6 (West 1992).) When construing the legislative intent behind the enactment of a statute, the statute must be read as a whole and all parts should be considered together. (*People v. N L Industries* (1992), 152 Ill. 2d 82, 98, 604 N.E.2d 349, 356.) An examination of Federal law reveals that identifying a nursing facility that is economically and efficiently operated is clearly a duty of the State.

The language of the Boren Amendment reveals that *the State* shall make findings and give assurances that the reimbursement system is adequate to reimburse the costs of a facility which is efficiently and economically operated. (42 U.S.C.A. § 1396a(a)(13)(A) (West Supp. 1994).) In *Wilder v. Virginia Hospital Association* (1990), 496 U.S. 498, 519, 110 L. Ed. 2d 455, 473, 110 S. Ct. 2510, 2523, the United States Supreme Court determined that *the State* must "judge

the reasonableness of its rates against the objective benchmark of an 'efficiently and economically operated facility.' " Therefore, the State must identify an economic and efficient facility in order to establish an objective benchmark. See, *e.g.*, *Illinois Health Care Association v. Bradley*, 776 F. Supp. at 419.

The Federal courts have further explained that, to satisfy the requirements of the Boren Amendment, *the State* must establish a nexus between the costs of operating an efficient and economical facility and the State's Medicaid reimbursement rate. See, *e.g.*, *Illinois Health Care Association v. Bradley* (7th Cir. 1993), 983 F.2d 1460, 1465; *Temple University v. White* (3d Cir. 1991), 941 F.2d 201, 209-10 n.11; *Pinnacle Nursing Home v. Axelrod* (2d Cir. 1991), 928 F.2d 1306, 1314.

However, this version of the Public Aid Code was adopted several years before the Boren Amendment. The Illinois Public Aid Code requires that the State adopt rates on a reasonable, cost-related basis, which is the approach rejected by Congress when it adopted the Boren Amendment. Nevertheless, the legislative history surrounding the adoption of this statute supports this interpretation.

During the debates, the legislature made it clear that the Illinois Public Aid Code was intended to coincide with Federal regulations in order to avoid inadvertently jeopardizing Federal matching funds. (80th Ill. Gen. Assem., Senate Proceedings, June 29, 1977, at 143 (comments of Senator Moore).) The Federal regulation to which the legislature alluded states that, in the case of a prospectively determined payment rate, such as Illinois', the rates should be set at the level which the State expects to be adequate to reimburse the allowable costs of a facility that is economically and efficiently operated. (Skilled Nursing and Intermediate Care Facility Services; Reimbursement, 41 Fed. Reg. 27,300, 27,306 (1976) (codified at 45 C.F.R. § 250.30 (1993)).) We must consequently conclude that, when the State proposed and adopted the Illinois Public Aid Code, it meant to adopt the Federal regulation's requirement that the State has the obligation to determine adequate rates for a facility that is economically and efficiently operated. Therefore, the State of Illinois must identify an economic and efficient facility.

We therefore conclude that the Public Aid Code provides that the reimbursement rate shall be an amount that *the State* determines to be adequate to reimburse the costs of an economic and efficient nursing facility. A *prima facie* case includes identification of the rights of the plaintiff and how the defendant has wronged the plaintiff. The right of the plaintiffs in this matter is a right to receive rates *that the State of Illinois has determined* to be adequate to reim-

burse allowable costs of a facility that is economically and efficiently operated. From this conclusion, it follows that it cannot be part of the plaintiffs' *prima facie* case to have to establish that they are operating nursing facilities that are economical and efficient.

We reach this conclusion because an opposite result would be patently unfair. If showing that they were economic and efficient facilities was an element of the plaintiffs' *prima facie* case but the State had not met its statutorily imposed obligation to identify an economic and efficient facility, no plaintiff would ever be able to bring an action challenging the rates.

■ For the above reasons, we conclude that the trial court erred in holding that it was the part of the plaintiffs' *prima facie* case to establish that they were economically and efficiently operated nursing facilities. We therefore reverse the decision of the trial court on this issue and remand this case so that the trial court can conduct further proceedings consistent with this opinion.

## II

We next turn to the issue of whether Carl Lindner should have been qualified as an expert witness.

At trial, the plaintiffs called Carl Lindner to testify. The plaintiffs sought to have the court qualify Lindner as an expert witness, but the trial court *sua sponte* declined to so do.

■ "An expert is a person who, because of education, training or experience, possesses knowledge of a specialized nature beyond that of the average person on a factual matter material to a claim or defense ***." (134 Ill. 2d R. 220(a)(1).) The test of the competency of an expert witness is whether he has sufficient knowledge of the subject matter of the litigation. (*Cleveringa v. J.I. Case Co.* (1992), 230 Ill. App. 3d 831, 850-51, 595 N.E.2d 1193, 1207.) To lay a proper foundation to qualify a witness, then, the party seeking to introduce the witness' testimony must show that the expert has particularized knowledge or experience in the area in which the expert is to express his or her opinion. (*C.D.L., Inc. v. East Dundee Fire Protection District* (1993), 252 Ill. App. 3d 835, 850, 624 N.E.2d 5, 15.) The standard of review for the appellate court to employ on this issue is whether the trial court abused its discretion. *Cleveringa,* 230 Ill. App. 3d at 851, 595 N.E.2d at 1207.

Carl Lindner is a self-employed health care consultant and software developer. At trial, Lindner reviewed his extensive background in the field of work measurement, particularly noting that he had worked for $5^1/_2$ years, devoting 70 hours per week, to the development of a data base in the area of health care measurement.

His standards had been granted recognition as MTM-HC, which is a data base apparently generally employed in the industry. Lindner stated that "MTM" stands for "methods, time measurement" and "HC" stands for "health care."

■ The trial court refused to qualify Lindner as an expert, stating that it had found Lindner "wanting in this field." The trial court found that Lindner was not an expert in the medical field and especially was not an expert in the area of nursing homes.

In establishing their cause of action, the plaintiffs attempted to identify the problems with the system of reimbursing Medicaid rates which is now employed by the State of Illinois. A review of the offer of proof shows that Lindner was called to give his opinions as to the inadequacies of the system for reimbursement of Medicaid costs in Illinois and how the methodology employed by the State led to significant shortfalls. He was not called to offer his opinion as to the activities of a nursing home or the costs related to providing adequate care in a nursing facility. It was therefore an abuse of the discretion of the trial judge to fail to accept Lindner as an expert witness and we reverse the decision of the trial court.

Because we have already decided to reverse this decision, concluding that the ruling on the directed finding was erroneous, we need not address the defendant's contention that this error did not amount to reversible error.

### III

The final issue which the plaintiffs ask us to address is whether, as a matter of law, the plaintiffs must demonstrate efficiency and economy of their nursing home operations as part of a *prima facie* case alleging violations of the Illinois Prompt Payment Act.

■ The State Prompt Payment Act (30 ILCS 540/0.01 *et seq.* (West 1992)) directs the State of Illinois to approve or disapprove bills within 30 days of receiving the bill. (30 ILCS 540/2 (West 1992).) The Act also states that the State must pay bills within 30 days of the date of approval. 30 ILCS 540/3 (West 1992).

When directing a finding for the defendant, the trial court held as follows:

> "[Plaintiffs' counsel]: So the ruling is that the motion for directed finding on counts 1 and 3 is granted because we did not demonstrate—
>
> THE COURT: Solely because you did not demonstrate that you were an economic and efficient[ly] run nursing home and I feel that that is necessary for you to maintain your cause and have a prima facie case."

■ After reviewing the provisions of the State Prompt Payment Act, we find that there is no mention of payment to nursing facilities in this statute and there is no indication that only facilities which are economically and efficiently operated are to be subject to the provisions of the State Prompt Payment Act. Nonetheless, when making its ruling, the trial court read this element into the Act. Therefore, the trial court improperly directed a finding in favor of the defendant on count III. We remand count III back to the trial court for further findings with respect to this matter, including whether this issue is properly presented to the circuit court or the Court of Claims, in light of the discussion in *Senn Park Nursing Center v. Miller* (1984), 104 Ill. 2d 169, 470 N.E.2d 1029.

## CONCLUSION
After considering this matter, we reverse the decision of the trial court and remand this case for further proceedings consistent with this opinion.

Reversed and remanded.

HOFFMAN, P.J., and CAHILL, J., concur.