NATIONAL EDUCATIONAL MUSIC COMPANY, LTD., Plaintiff-Appellee, v. GUSTAV RIECKHOFF, d/b/a Quincy School Music Center, Defendant-Appellant.

Fourth District   No. 4—97—0023

Argued August 19, 1997.—Opinion filed September 11, 1997.

Donald R. Schuering (argued), of Goehl, Schuering & Cassens, of Quincy, for appellant.

Curtis T. Lovelace (argued), of Schmiedeskamp, Robertson, Neu & Mitchell, of Quincy, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

After a bench trial in the circuit court of Adams County, defendant, Gustav Rieckhoff, d/b/a Quincy School Music Center, was found to have converted property of the plaintiff, National Educational Music Company, Ltd., after plaintiff had terminated, for cause, the contract between the two parties. Judgment was entered in favor of plaintiff in the amount of $20,584.60. Defendant appeals, alleging the trial court erred in refusing to grant his motion for leave to file a counterclaim and allowing one of plaintiff's witnesses to give expert testimony without being qualified as an expert. We affirm.

Plaintiff, a company based in New Jersey, operates a program renting band instruments to elementary and high school students conducted, primarily, through affiliate agreements with local music stores throughout the country. At the time of the trial in this case, plaintiff had 180 active licensed affiliates. On August 20, 1992, plaintiff and defendant entered into an affiliate agreement whereby defendant would act as an affiliate for plaintiff, renting and servicing band instruments to the public in Quincy, Illinois. In late February 1995, plaintiff's vice president sent defendant a letter stating certain problems in the business dealings of the two parties needed to be cleared up or the agreement would be terminated by May 1, 1995. On May 1, 1995, plaintiff's national franchise manager sent defendant another letter terminating the affiliate agreement.

On January 3, 1996, plaintiff filed a two-count complaint against defendant. Count I of the complaint was titled "(Accounting Action)" and sought an accounting of rental payments for instruments plaintiff alleged defendant had rented to customers but had not remitted to plaintiff. The count also requested a judgment be entered in favor of plaintiff for the amounts found not to have been remitted by defendant. Count II was titled "(Conversion)" and alleged after the affiliate agreement between the parties was terminated on May 1, 1995, defendant refused either to deliver to plaintiff or reimburse plaintiff for the value of all rental instruments, supplies and documents pertaining to them provided to defendant by plaintiff pursuant to the affiliate agreement. Plaintiff requested the value of its property still held by defendant.

Defendant was served with the complaint on January 16, 1996. On February 15, defendant sent a letter to the trial court asking for an extension of time to file an answer. The case was put on the motion calendar of March 11. On March 7, defense counsel filed an entry of appearance and request for additional time to plead. On March 11, defendant was given an additional 28 days to plead. Defense counsel filed another motion for an extension of time to plead on April 4, claiming defendant was out of town and unable to meet with counsel to prepare an answer. On April 8, defendant filed a letter with the court requesting additional time to plead because defense counsel's office had been heavily damaged by fire on April 6 and additional time would be needed to reconstruct an answer and counterclaim to plaintiff's complaint.

On April 22, defendant was given an additional 21 days to plead. Defense counsel filed an answer on defendant's behalf on May 14, denying he had failed to remit rental payments and denying he had kept instruments belonging to plaintiff. The trial court held a case-management conference on June 24 and set November 11, 1996, as the date for completion of all discovery and December 11 as the date for a bench trial. Defendant served no discovery requests upon plaintiff until October 28, when he served interrogatories and a request for production of documents. On that date, defendant also filed a motion to continue the trial date and a motion for leave to file a counterclaim for commissions not paid, infringement upon defendant's franchise territory and unauthorized charges to his account. On November 13, the trial court denied both motions.

On December 2 and 3, defense counsel filed motions to continue the trial date and a motion to compel discovery, alleging plaintiff had not complied with all of the production requested. The motions to continue were denied and the motion to compel was granted in part.

Then, on December 10, defendant delivered to the office of plaintiff's counsel 120 band instruments belonging to plaintiff. Trial commenced the next day, December 11.

During the plaintiff's case, Eugene Garb, plaintiff's vice president, testified he became part owner of plaintiff in 1980 after working for many years on accounting and financial matters for plaintiff while employed with an accounting firm. He testified to the affiliate agreement with defendant and how defendant breached the agreement. Garb also testified, over defendant's objection, to the cost of repairing the musical instruments returned by defendant the day before trial. The trial court acknowledged instrument repair was not Garb's field of expertise, but Garb testified he had previously inspected many instruments that were in need of repairs and he could identify the needed repairs while not being able to do them himself. Also, in handling the financial affairs of the company, Garb had been exposed to the costs for repair work. Therefore, since defendant had, without notice, turned the instruments over the day before trial and plaintiff could not have anticipated the need for a repair expert on the day of trial, the trial court allowed Garb to testify to the cost of repairing the returned instruments.

After plaintiff had finished with its evidence, defendant moved for a directed finding on count I. The trial court granted his motion, finding there had been no evidence introduced in regard to rental receipts diverted or otherwise unaccounted for by defendant.

Defendant presented his evidence and the trial court found for plaintiff on count II and awarded a judgment of $20,584.60, of which $8,007 was the cost of repair to the returned instruments. The remainder represented the value of over 40 instruments not returned or otherwise accounted for by defendant.

Defendant first contends it was error for the trial court to deny his motion for leave to file a counterclaim. A hearing was held on defendant's motion on November 13, 1996. There is no transcript of the proceedings in the record. However, the court's docket entry indicates counsel for both parties were present that day and arguments were heard. The trial court denied defendant's motion.

■ A trial court's decision to deny a motion to amend pleadings is discretionary and will not be reversed absent a manifest abuse of that discretion. *In re Estate of Nicholson*, 268 Ill. App. 3d 689, 695, 644 N.E.2d 47, 51 (1994). Defendant contends plaintiff did not object to his motion to file the counterclaim. As previously noted, there is no record of the hearing on defendant's motion so we have no way of knowing for certain whether plaintiff objected to the motion, although plaintiff does not raise that point on appeal. In any case, a

party does not have an absolute right to file a counterclaim anytime he wishes to do so and the timeliness of a request to amend a pleading may be considered by the trial court. *Trans World Airlines, Inc. v. Martin Automatic, Inc.*, 215 Ill. App. 3d 622, 627, 575 N.E.2d 592, 595 (1991). Also to be considered is whether other parties have been prejudiced or surprised. *Marsh v. Nellessen*, 235 Ill. App. 3d 998, 1001, 602 N.E.2d 90, 92 (1992).

■ Defendant argues his counterclaim is for commissions plaintiff still owes him for rental agreements he procured as its authorized affiliate and he offers this argument as the reason he did not return all of plaintiff's instruments in his possession. While defendant may have a valid claim for commissions, he does not give any explanation as to why he could not have filed his counterclaim for the commissions at the time he filed his answer, except that he needed the discovery from plaintiff with which plaintiff did not entirely comply. However, defendant knew when the discovery cutoff date was several months in advance and yet did not even file any discovery requests until six months after filing his answer and just four days before the discovery deadline. A trial court does not abuse its discretion by denying a party's request to amend pleadings when the party has been dilatory in conducting discovery. *Nicholson*, 268 Ill. App. 3d at 695-96, 644 N.E.2d at 52.

■ Section 2—608(a) of the Civil Practice Law provides any claim a defendant may have against a plaintiff or other defendant *may* be pleaded as a cross-claim and shall be called a counterclaim. 735 ILCS 5/2—608(a) (West 1996). If a counterclaim is filed, it is required to be filed as part of the answer. 735 ILCS 5/2—608(b) (West 1996). However, unless the claim is for contribution, it is not required to be brought in a pending action but may be brought as a separate action. Thus, defendant could have brought his action for commissions separately.

Defendant argues the *Marsh* case stands for the proposition a counterclaim may be filed at any time if it would be strategically inadvisable or inconvenient to bring it at the time an answer is filed. *Marsh*, 235 Ill. App. 3d at 1001, 602 N.E.2d at 92. However, in *Marsh* the court was dealing with an instance where the defendants had already filed affirmative defenses based on the same theory as the counterclaim they wished to file only two weeks before trial. The only real difference between the affirmative defenses and the counterclaim was the amount of damages. Thus, the plaintiff had notice of the claim made by the defendants much earlier and was not prejudiced thereby.

■ In this case, defendant did not file any affirmative defenses.

Further, there is no indication from defendant's answer or the rest of the record that defendant asserted at any time prior to 44 days before trial, when he moved to file his counterclaim, that plaintiff still owed him commissions, the breach of the affiliate agreement was precipitated by plaintiff's interference with defendant's territory and defendant was justified in withholding plaintiff's instruments. The record indicates defendant contended earlier *he did not have* plaintiff's instruments to return.

We find no abuse of discretion in denying defendant's motion to file his counterclaim where the theory of his counterclaim was different from his previous theory of the case and he had failed to engage in discovery he claimed he needed to support his counterclaim until shortly before the discovery cut-off date imposed by the trial court several months before.

Defendant next contends the trial court erred in permitting Garb to testify to the cost of repairing the instruments defendant returned because he was not an expert on the subject of musical instrument repair.

■ ■ The burden of establishing the qualifications of an expert witness is with the proponent of the witness. *Schaffner v. Chicago & North Western Transportation Co.,* 129 Ill. 2d 1, 36, 541 N.E.2d 643, 658 (1989). The party seeking to introduce expert testimony must show the witness has particularized knowledge or experience in the area upon which the witness is to express an opinion. *Illinois Health Care Ass'n v. Wright,* 268 Ill. App. 3d 988, 997, 645 N.E.2d 1370, 1375-76 (1994). A witness is qualified to give expert testimony if, because of his knowledge, skill, experience, training or education, he is able to better form an accurate opinion on the issue in question than the average person. *Hill v. Ben Franklin Savings & Loan Ass'n,* 177 Ill. App. 3d 51, 57, 531 N.E.2d 1089, 1093 (1988). If an expert witness possesses specialized knowledge that will assist the trier of fact, he may testify concerning that knowledge. *Lee v. Chicago Transit Authority,* 152 Ill. 2d 432, 459, 605 N.E.2d 493, 504 (1992). It is within the discretion of the trial court to determine whether the witness has been qualified. *People v. Jordan,* 103 Ill. 2d 192, 208, 469 N.E.2d 569, 576 (1984).

A trial court's decision to accept expert testimony from a witness may not be overturned absent an abuse of discretion. *Decker v. Domino's Pizza, Inc.,* 268 Ill. App. 3d 521, 528, 644 N.E.2d 515, 520 (1994).

■ Garb testified about the instruments he had inspected that had been turned over to plaintiff's counsel the previous day. He testified to what repairs were needed and the cost of those repairs. His

testimony was relied upon by the trial court in calculating damages for charges to get the instruments back into the condition they were when they were originally delivered to defendant. Defendant offered no evidence to rebut Garb's testimony but objected to it on the grounds he was not qualified to testify about the needed repairs and their costs because his job did not entail the repair of musical instruments.

Garb testified he was the outside accountant for plaintiff for approximately 18 years in which time he did inventory, prepared financial statements and examined plaintiff's inventory by doing the audits. After 1980 he was employed as a vice president by plaintiff and became directly involved with the instruments, seeing them in the repair shop, seeing them in the condition they were in when they were sent to affiliates and reviewing with the repair shop workers the costs of repairing the instruments and what was involved in putting them back in like-new condition. Specifically, Garb offered detailed testimony regarding the anatomy of different instruments and the defects he found in those instruments when he had inspected them the day before trial.

The trial court found Garb had sufficient knowledge to testify to the needed repairs and their costs and his testimony would be helpful in assessing the amount of damages for restoring the instruments to the condition they were in when assigned to defendant. Further, the trial court noted that plaintiff's headquarters was in New Jersey and Garb had come to Illinois for the trial. Defendant waited until the day before trial to produce these instruments and plaintiff was not able to bring another worker from New Jersey quickly enough to inspect the instruments the night before trial. The trial court found defendant's arguments on Garb's expertise might have been stronger had he tendered the instruments to plaintiff months before as he should have, but he could not preclude plaintiff from having the opportunity to recover for the damages suffered in repairing those instruments by waiting to return the instruments until the eve of trial.

Garb demonstrated knowledge of the repairs necessary to restore musical instruments to their original condition and the cost of those repairs above the knowledge of the average person. Further, he demonstrated knowledge of a specialized nature in describing the inner workings of specific musical instruments. This knowledge was of benefit to the trial court in determining the amount of damages to assess

against defendant. We find no abuse of discretion on the part of the trial court in allowing Garb's testimony.

The judgment of the trial court is affirmed.

Affirmed.

GARMAN and GREEN, JJ., concur.