Victoria Alexander, Plaintiff-Appellee, v. Alice Mermel, Individually and as Administrator of the Estate of Peter Mermel, Deceased, Defendants-Appellants.

### Gen. No. 47,921.

First District, Second Division.
October 4, 1960.

Edward A. Sinden, of Chicago, for appellants.

Anthony J. Mentone, of Chicago (Harry G. Fins, of counsel) for appellee.

MR. JUSTICE BRYANT delivered the opinion of the court.

This is an appeal from a judgment on the pleadings in a cause brought to recover the proceeds of certain U. S. Savings Bonds. The action was brought by Victoria Alexander, surviving co-owner of the bonds and a sister of the deceased co-owner, against Alice Mermel, wife of the deceased co-owner. Alice Mermel filed an intervening petition as Administrator.

During a period between May, 1942, and October, 1949, ninety-three U. S. Savings Bonds Series E were purchased by Peter Mermel, deceased, with his own funds. Ninety-two of the bonds were registered in the name of "Peter Mermel or Victoria Bigos" and one bond was registered in the name of Peter Mermel, payable on death to Victoria Bigos. Victoria Bigos subsequently married and is now known as Victoria Alexander. She is the sister of Peter Mermel, deceased. The face value of the bonds which were purchased was $6,100.00.

Peter Mermel married the appellant on November 23, 1949. He died on July 20, 1957. Appellant retained possession of the bonds after the death of Peter Mermel and this declaratory judgment action was filed praying for possession of the bonds and an adjudication of ownership in appellee.

On appellee's motion for judgment on the pleadings, the court entered declaratory judgment that the sole

and absolute ownership of the savings bonds was in appellee, and that Alice Mermel, individually or as administrator for Peter Mermel, has no right, title or interest in the Savings Bonds. This appeal is from that judgment.

Appellant in her answer to the complaint alleges that after the marriage of Peter Mermel, for the purpose of settling the rights in the bonds as between them, Peter Mermel and his sister, the appellee here, entered into an oral agreement by which she agreed to give up her rights in the bonds in exchange for sole ownership of a certain bank account and three Savings Bonds, having a combined value of over $3,000.00. The passbook and bonds were delivered to appellee and she has retained them as her own.

■ Taking the allegations as true, as we must on a motion for judgment on the pleadings (Thillens v. Hodge, 2 Ill.2d 45, 116 N.E.2d 886; Dryz v. Bol, 19 Ill.App.2d 406, 153 N.E.2d 859) we turn to the problem of applying the law to the situation thus presented.

Our case has for its decision three essential portions: 1) whether the surviving co-owner or the estate of the deceased co-owner is entitled to the proceeds of U. S. Savings Bonds upon the death of the co-owner who supplied the consideration for the purchase; 2) if the party entitled to the proceeds is determined by the federal regulations dealing with the party to whom the government may make payment, which means that the surviving co-owner is the only one to whom the government will pay, may a constructive or resulting trust be imposed upon the funds in the hands of such co-owner; 3) if a trust may be so imposed, was there sufficient evidence of the creation of the trust in the oral agreement to accept other funds for appellee's interest in the bonds, and is it possible for one co-owner to so assign her rights?

As to point one, there are two different solutions to be found in the decisions.

One view is that the federal law and regulations become a part of a contract between the purchaser and the government, creating property rights in the co-owner, and that payment to the surviving co-owner makes such co-owner the absolute owner of the proceeds of the bonds. The other, and minority view, is that the federal regulations do not become a part of a contract, but are only a specification of a convenient method through which the government may discharge its liability and yet not become involved in litigation. Under this view, the source of the funds used in purchasing the bonds and the state laws as to the devolution of property become important in determining whether the co-owner is the absolute owner or merely indebted to the estate of the co-owner supplying the funds for the purchase.

Aside from questions of the supremacy of the federal law (Lee v. Anderson, 70 Ariz. 208, 218 P.2d 732), the majority view proceeds on the contract theory, whether it be characterized as a third party beneficiary contract or not. Chase v. Leiter, 96 Cal.App.2d 439, 215 P.2d 756; In Re Barnes' Will, 4 Wis.2d 22, 89 N.W.2d 807. Thus, the courts have been unwilling to vary the terms of the written agreement. The surviving co-owner need not have contributed anything to the purchase of the bonds, Lambert v. Lambert, 95 Ohio App. 187, 118 N.E.2d 545. Retention of possession of bonds purchased by the decedent with his own funds does not defeat the right of the surviving co-owner to the proceeds of the bonds. Hinson v. Plowden, 91 F. Supp. 836 (DCSC 1950). The intention to make a gift, or the lack of such intention, is not determinative. Conrad v. Conrad, 66 Cal.App.2d 280, 152 P.2d 221; Knight v. Wingate, 205 Ga. 133, 52 S.E. 2d 604. The state laws of descent and distribution have

no application to vary the terms of the contract. In Re Clemmons, 242 Iowa 1248, 49 N.W.2d 883. The proceeds devolve through the contract, and not by the will of the deceased co-owner. Hill v. Havens, 242 Iowa 920, 48 N.W.2d 870. However, once the proceeds have been paid over to the surviving co-owner, even in jurisdictions using the contract approach the funds may be impressed with a constructive or resulting trust in appropriate circumstances. See 51 ALR2d 163.

The second approach to this problem has been used by a minority of jurisdictions. It requires an investigation of the donative intent of the co-owner supplying the funds with which the bonds are purchased and the state laws of devolution of property become important in the determination of ownership. In re Gladney, 223 La. 949, 67 So.2d 547.

One reason exists for believing that the Illinois Supreme Court would adopt this view, and that is the decision in In re Estate of Schneider, recently applied by this court in the case of In the Matter of the Estate of Fitterer (Gen. No. 47958), in which the former contract theory was abandoned in favor of the gift theory in solving the problem of survivorship rights in joint bank accounts.

However, a valid reason exist for not applying this approach to U. S. Savings Bonds. Unlike the joint bank account provisions, the Illinois statutory provision is parallel to and based upon the federal laws and regulations. Section 315–45(c) of the Code of Federal Regulations provides:

> "If either co-owner dies without having presented the bonds for payment, or authorized reissue, the surviving owner will be recognized as the sole and absolute owner of the bonds, and payment or reissue will be made only to such survivor as though the bond was registered in his name alone."

Ill. Rev. Stat. 1957, Chap. 76, sec. 2, provides in pertinent part:

"If any such non-transferable bond, debenture, note or other obligation of the United States of America be made payable to two persons, in the alternative, such bond or other obligation shall, upon the death of either person, if such bond or other obligation is then outstanding, become the property of and be payable to the survivor of them."

This provision would seem to be a recognition by the legislature that the bonds issued pursuant to the law and regulations of the federal government require observance thereof in controversies over the distribution of the proceeds of the bonds. The Illinois provision creates "property" rights in the surviving co-owner, which is the very basis of the contract approach. It does not relegate the regulations to the position of being merely a method of payment through which the government may prevent itself from becoming involved in litigation, as the gift theory would require. ■■ There is no inconsistency between the federal and the Illinois law on the subject. There is no necessity for adopting a tortured interpretation of the agreement formed by the bonds in order to uphold the state statutes of wills or of devolution of property. Under Illinois law, then, the proceeds of the bonds are properly paid to the surviving co-owner, but there remains the question of what use may be made of the funds in the surviving co-owners hands. ■■ As to point two, the Appellate Court has held that a resulting trust may be imposed upon the proceeds from U. S. Savings Bonds. In Zimmerman v. Schuster, 14 Ill.App.2d 535, at page 546, 145 N.E.2d 94, the court said in dismissing the contention that trust doctrine could not be applied to the U. S. Bonds:

"Resulting trust have been impressed on United States savings bonds or their proceeds in relatively few instances, and the impact of the Treasury Regulations as they may bear on the applicability of the resulting trust doctrine has seldom been the subject of judicial scrutiny. In the main, the limited amount of authority has considered that the Federal Statute and Treasury Department Regulations concerning United States Savings Bonds do not render the Bonds or their proceeds immune to the resulting trust doctrine; and that in a proper case such Bond or their proceeds may be impressed with a resulting trust. 51 A.L.R.2d 173."

■■ As to point three, it is clear that in Illinois a trust in personal property need not be in writing. Williams v. Anderson, 288 Ill. App. 149, 5 N. E. 1041; Catherwood v. Morris, 345 Ill. 617, 178 N. E. 187. It is also clear that a resulting trust may be proved by parol. The intentions of the parties may be shown by proof of a parol agreement in accordance with which title is taken. Mercury Club v. Keillen, 323 Ill. 24, 153 N. E. 753.

■ Proof of the oral agreement in our case then, would seem to be proper justification for the court in imposing a resulting trust upon the proceeds of the Bonds unless there is something inherently wrong with allowing an assignment of one's interest in the proceeds on U. S. Bonds, as the appellee contends.

In the case of In re Hendricksen's Estate, 156 Neb. 463, 56 N.W.2d 711, cert. den. 346 U. S. 854, the decedent purchased U. S. Savings Bonds with her own funds, naming her daughter as co-owner. The Bonds were in the possession of the daughter when the decedent died, and she refused to turn them over to the estate. Sometime before the death of the decedent, the daughter had executed an assignment of all her interest in the Bonds to the decedent. The court held

that the whole interest in the Bonds was in the decedent upon the assignment to her of the daughter's interest. The court said, on page 719 of 56 N.W.2d:

"From an examination of the cases cited by the defendant we are unable to find any case in which a conveyance by one co-owner of savings bonds to another was involved. For the most part the cases cited by the defendant refer to a situation where no positive act of the parties themselves, those who are co-owners of the bonds, intervenes between the time the bonds are issued and the time the dispute arises. The government would have no interest as to how the assets of Florence Hendricksen's estate would be distributed, or that by the last will of Florence Hendricksen, Ethel V. Kelley [daughter] had no further rights in the estate so long as she retained the proceeds of the bonds. It seems clear that the federal laws and regulations are not intended to interfere with the positive act of the two co-owners of bonds by which one conveys her interest in them to the other.

"The government's interest is a contractual one. Its obligation was to pay either of the co-owners the amount agreed upon as shown by the bonds upon their proper presentation, in compliance with the federal law. When the Treasurer of the United States satisfied the government's obligation by paying the proceeds of the bonds to Ethel V. Kelley, the government's interest in the matter ended. The government is in no sense a party to this litigation, and under the facts and circumstances could in no event have any interest in the result of this litigation.

"The court decreed that Ethel V. Kelley deliver the proceeds which she obtained from cashing the bonds to the executor in accordance with her as-

signment of the bonds for a consideration to her mother, whereby she agreed to take her share of the estate as provided for her by her mother's will. There is nothing contrary to the laws of the United States or the regulations of the United States Treasury Department. Those laws and regulations do not prevent the declaration of a resulting trust in the proceeds of the bonds as shown under the facts in this case."

■ The instant case also involves an assignment of a co-owner's interest to the other co-owner. Nothing has been indicated which would require a finding that such an assignment is against the public policy as expressed by the federal laws and regulations. In addition, the evidence shows that appellee acknowledged that the proceeds were properly subject to the provisions of the assignment when the benefits of the assignment in the form of the bank account and the bonds were accepted and enjoyed. This constitutes sufficient consideration for the assignment.

It is reasonable that Peter Mermel should have acted as he did in giving his sister property which had an aggregate value of over $3,000.00 in order to preserve the equivalent of the interest in the bonds which he had originally vested in her. At the time she was made co-owner of the Bonds they lived together and she was the natural object of his bounty. However, after each was married, and six years had passed, he evidenced an intention to provide for his wife with the Bonds by seeking what amounted to a division of the interests in the bonds. The bonds had a face value of $6,100.00, and so by paying $3,000.00 for the full interest in the bonds, a split of the interests was effectuated.

Furthermore, even if the gift approach rather than the contract approach were taken to this problem, the facts in this particular case require a finding that the

owner of the bonds is the estate of the deceased co-owner. The donor of the gift under this theory has revoked his donative intent and the donee has agreed to relinquish her rights in the bonds which were given her. The oral agreement was supported by consideration which consisted of certain Savings Bonds and a bank account. These benefits of the agreement have been accepted by appellee and she now attempts to dispute the existence of such an agreement. Appellee, through the agreement, effectively conveyed her interest in the bonds to the other co-owner and any intention which might have existed to make the bonds a gift in the first instance was then negated by mutual understanding of the co-owners.

For the reasons indicated above, the judgment of the trial court is reversed and the cause remanded for a trial upon the issues of fact created by the pleadings.

Reversed and remanded with directions.

BURKE, P. J. and FRIEND, J., concur.