MICHELLE ELANE, as Special Adm'r of the Estate of Terrance Elane, Deceased, Plaintiff, v. ST. BERNARD HOSPITAL *et al.*, Defendants (Llwellyn L. Greene-Thapedi, Petitioner-Appellant; Jeffrey M. Goldberg and Associates, Ltd., Respondent-Appellee).

First District (4th Division)   No. 1—95—4060

Opinion filed October 24, 1996.—Rehearing denied November 27, 1996.

866

R. Eugene Pincham, of Chicago, for appellant.

Jeffrey M. Goldberg & Associates, of Chicago (Jeffrey M. Goldberg and Lawrence R. Kream, of counsel), for appellee.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

Petitioner, Llwellyn Greene-Thapedi (Thapedi), initiated this action to recover attorney fees allegedly owed to her by respondent Jef-

frey M. Goldberg and Associates, Ltd. (Goldberg). Thapedi entered into a fee contract which referred four medical malpractice cases, including the instant action, to Goldberg. Shortly thereafter, Thapedi became a judge. Goldberg paid Thapedi a referral fee after one of the four cases settled, but refused to pay her such a fee upon settlement of the case at bar. Thapedi filed a petition seeking to enforce the referral contract. After an evidentiary hearing was initiated, Thapedi filed motions for judgment on the pleadings and for summary judgment. The trial court denied her motions but subsequently directed a finding in favor of Goldberg. Thapedi has appealed, and we reverse and remand this cause for further proceedings.

Prior to November 1, 1988, Thapedi was retained to recover damages for the wrongful death of Terrance Elane. Thapedi filed a complaint in this cause on February 6, 1991. Thapedi later referred this case and three other medical malpractice cases to Goldberg shortly before she assumed the bench in December 1992. The plaintiffs in the instant action agreed to retain Goldberg and consented to a division of fees between Goldberg and Thapedi.

The record indicates that one of the other referred cases, Buchanan v. University of Chicago Hospital (*Buchanan*), was settled in April 1994 while Thapedi was a sitting judge. After *Buchanan* settled, Goldberg paid Thapedi $15,000 for her portion of the fees and $9,500 for her costs.

On December 8, 1994, the trial court approved a $750,000 settlement in the instant case and ordered a distribution of $200,000 in attorney fees to Goldberg. Thapedi made written and oral demands that Goldberg pay her a portion of the fees as per their referral fee contract. On April 17, 1995, Thapedi filed a "Petition for Adjudication of Entitlement to Attorney's Fees, Consistent with the Referral Fee Contract."

On June 19, 1995, the trial court began an evidentiary hearing. Thapedi identified her agreement with Goldberg and affirmed that it was entered into on or about December 4, 1992, before she was sworn in as a judge. She acknowledged that she could not practice law after assuming the bench, but said that she remained "a person who would be responsible for any litigation that might arise (on the referred cases) as a result of either malfeasance, malpractice or anything else." The hearing terminated before Thapedi completed her direct testimony and without any cross-examination. Both the fee referral agreement and the attorney retainer agreement were admitted into evidence, and the matter was continued to July 11, 1995.

Thapedi noticed an emergency motion for judgment on the pleadings for hearing on July 11. On that date, the court concluded that

an evidentiary hearing was necessary, ordered a briefing schedule for the motion, and set the motion for hearing on August 22, 1995. On July 27, 1995, Goldberg filed an answer to Thapedi's petition, a response to Thapedi's motion for judgment on the pleadings, and a cross-motion for judgment on the pleadings. In its answer, Goldberg stated that the fee referral contract attached to Thapedi's petition "speaks for itself," but denied that the document represented the entire contract. Goldberg admitted entering into the "Attorney Retainer Agreement" covering this action, which provided that Thapedi would receive 45% of the total attorney fees if the matter was settled or tried, and admitted receiving $200,000 pursuant to the court's settlement order. Goldberg also admitted it did not pay the referral fee to Thapedi, but claimed that its refusal was based on a belief that it was ethically prohibited from doing so. Goldberg included affirmative defenses which charged that (1) Patricia Elane's revocation of her consent to the splitting of fees between Goldberg and Thapedi had rendered the contract void under Rule 1.5(g) of the Rules of Professional Conduct (134 Ill. 2d R. 1.5(g)), (2) Thapedi was prohibited from assuming legal responsibility as required under the Illinois Rules of Professional Conduct, and (3) Thapedi's failure to file suit before the statute of limitations precluded Patricia's recovery and, thus, vitiated Thapedi's entitlement to a referral fee.

On August 22, 1995, the trial court denied Thapedi's motion for judgment on the pleadings. The court concluded that an evidentiary hearing was required to determine whether the contract was enforceable and, if not, to determine the amount that Thapedi was entitled to on a *quantum meruit* basis. The matter was continued to October 17, 1995.

On September 29, 1995, Thapedi filed a motion for summary judgment, which the trial court denied on October 17, 1995. Upon the denial of her summary judgment motion, Thapedi's counsel informed the court that she had no further evidence to present. Thereupon, Goldberg moved for a directed finding, which the trial court granted. Judgment was entered in favor of Goldberg and Thapedi appealed.

Thapedi first contends that the trial court erred in denying her motions for judgment on the pleadings and for summary judgment. Thapedi argues that no genuine issue of fact existed and that the validity and enforceability of the contract were questions of law. *Marvin N. Benn & Associates, Ltd. v. Nelsen Steel & Wire, Inc.*, 107 Ill. App. 3d 442, 446, 437 N.E.2d 900 (1982). Goldberg counters that this court has no jurisdiction to review the denial of either motion.

■ We hold that the trial court properly denied Thapedi's motion for summary judgment because it was untimely. The purpose of sum-

mary judgment proceedings is to determine if any genuine issues of fact exist which require a trial. *Hayes v. Board of Fire & Police Commissioners*, 230 Ill. App. 3d 707, 712, 595 N.E.2d 683 (1992). Thapedi's motion, filed more than three months after the evidentiary hearing was initiated, was contrary to the very concept of summary judgment. Our conclusion that summary judgment is a pretrial motion is supported by the fact that section 2—1005 of the Code of Civil Procedure (Code), which addresses summary judgment proceedings, is found in article II, part 10, of the Code, which is entitled "Pre-Trial Steps." 735 ILCS 5/2—1001 *et seq.* (West 1994); *Tadros v. Kuzmak*, 277 Ill. App. 3d 301, 309, 660 N.E.2d 162 (1995).

In addition, Thapedi's summary judgment motion was untimely pursuant to Rule 2.1(f) of the circuit court of Cook County, which states that "[a]ll motions for summary judgment shall be filed and noticed for hearing not later than forty-five (45) days before the trial date, except by prior leave of court and for good cause shown." Cook Co. Cir. Ct. R. 2.1(f) (amended eff. April 23, 1992).

Even if Thapedi's motion for summary judgment was not untimely, the denial of a motion for summary judgment is not reviewable on appeal because any error in the denial of such a motion merges into the subsequent judgment. *Banwart v. Okesson*, 83 Ill. App. 3d 222, 225, 403 N.E.2d 1234 (1980). An exception to the rule recognizes that nothing precludes an appellate court from reviewing the denial of a motion for summary judgment in an appeal from a final judgment where there has been no evidentiary hearing and the party seeking review has done nothing to avoid or prevent such hearing or trial. *Cedric Spring & Associates, Inc. v. N.E.I. Corp.*, 81 Ill. App. 3d 1031, 1034, 402 N.E.2d 352 (1980).

The instant case presents unique circumstances given that an evidentiary hearing on Thapedi's petition had commenced prior to the filing of her summary judgment motion. The chronology of the proceedings does not, however, bring this case within the exception articulated in *Cedric Spring* as Thapedi elected to stand on her decision not to produce further evidence after the trial court denied her motion for summary judgment. Since Thapedi effectively prevented any further hearing after the denial of her motion, she cannot take advantage of the exception to the rule. Therefore, we dismiss her appeal from the denial of her motion for summary judgment.

■ Thapedi also claims she was entitled to a judgment on the pleadings. The trial court denied her motion on August 22, 1995, after concluding that an evidentiary hearing was necessary to determine whether the contract was enforceable.

A motion for judgment on the pleadings admits the truth of all

well-pleaded facts in the opponent's pleadings and raises the issue of whether, based on the pleadings alone, the movant is entitled to judgment as a matter of law. See, *e.g., Alexander v. Mermel*, 27 Ill. App. 2d 281, 169 N.E.2d 569 (1960). Where, as in this case, a petitioner moves for judgment on the pleadings, the court is faced with one of two issues of law, namely, whether the denials contained in the respondent's answer place the parties at issue on a material fact which forms the basis of the petitioner's right to the relief she seeks, or whether the facts alleged in the answer constitute a legally sufficient defense to the petitioner's claim. We believe Thapedi failed to sufficiently demonstrate that a judgment based solely on the pleadings should be entered in her favor. In its answer, Goldberg stated that the fee referral contract "speaks for itself," but it denied that the document represented the entire contract. Goldberg's answer and affirmative defenses called into question the terms of the referral contract; therefore, the trial court did not err in denying this motion.

Thapedi last contends that the trial court erred in granting Goldberg's motion for a directed finding. In order to determine whether the trial court erred in this regard, we must first determine the propriety of the fee referral agreement at issue. Our resolution of the matter appears to present an issue of first impression in Illinois.

■ Rule 1.5 of the Illinois Rules of Professional Conduct provides in pertinent part:

"(f) Except as provided in Rule 1.5(j), a lawyer shall not divide a fee for legal services with another lawyer who is not in the same firm, unless the client consents to employment of the other lawyer by signing a writing which discloses:

(1) that a division of fees will be made;

(2) the basis upon which the division will be made, including the economic benefit to be received by the other lawyer as a result of the division; and

(3) the responsibility to be assumed by the other lawyer for performance of the legal services in question.

(g) A division of fees shall be made in proportion to the services performed and responsibility assumed by each lawyer, except where the primary service performed by one lawyer is the referral of the client to another lawyer and

(1) the receiving lawyer discloses that the referring lawyer has received or will receive economic benefit from the referral and the extent and basis of such economic benefit, and

(2) the referring lawyer agrees to assume the same legal responsibility for the performance of the services in question as would a partner of the receiving lawyer." 134 Ill. 2d R. 1.5(f), (g).

The record indicates that the contract between Thapedi and Goldberg resembled the fee arrangement contemplated in Rule 1.5 where the primary service performed by the referring lawyer was the referral of the client to the other lawyer. While Thapedi filed the complaint in the underlying action, most of the work on the case appears to have been performed by Goldberg.

The fee agreement between Thapedi and Goldberg provided that Thapedi was to receive 45% of the total attorney fees if the matter was settled or tried. Although the referral fee contract itself does not state that Thapedi assumed "legal responsibility," the contract provided that Goldberg would represent these claims "subject to the terms of the retainer agreement." The "Attorney Retainer Agreement," signed by Thapedi, Goldberg, and the plaintiffs in the instant case, provided that "the 'referral attorney' [Thapedi] will remain legally responsible for the performance of services to the extent required under Rule 1.5 of the Illinois Rules of Professional Conduct." The retainer agreement further explained the economic benefits to be received by Thapedi in the event of a settlement or trial. Facially, the contract here fulfilled the requirements of Rule 1.5.

■ We must next determine whether the "legal responsibility" proviso in Rule 1.5(g), as applied to the facts here, is inconsistent with Illinois Supreme Court Rule 65, which states that a judge should not practice law. 134 Ill. 2d R. 65(F). In support of her position, Thapedi cites to informal opinions issued by the Chicago Bar Association Professional Responsibility Committee and the Illinois Judicial Ethics Committee which interpreted the rules regarding division of fees as applied to a contract involving an attorney who later becomes a judge. Although these opinions are not precedential, we find their analyses sound.

The legal ethics opinion issued in 1988 by the Chicago Bar Association's Professional Responsibility Committee interpreted former Rules 2—107(a)(1) and (a)(2) of the Illinois Code of Professional Responsibility, which were substantively identical to current Rules 1.5(f) and (g). The committee opined that "legal responsibility" within the meaning of Rule 2—107 involved "the acceptance of passive, financial guaranty obligations." Chicago Bar Association PRC Opinion 87—2, at 4. This conclusion was based on the Committee Commentary to Rule 2—107, which stressed that the rule was intended to permit the payment of referral fees without requiring actual participation by the referring attorney. The commentary stated that the rule "expressly sanctions payment of a fee to the referring lawyer where that lawyer takes no part in the actual handling of the case—a practice which is apparently prohibited by

the ABA rule—so long as the referring lawyer assumes responsibility for the work of the other as though he were the other's partner, and the total fee of the lawyers does not exceed reasonable compensation for the legal services performed." 107 Ill. 2d Canon 2, Rule 2—107, Committee Commentary at 625. The committee concluded that the retention of such legal responsibility should not be deemed to constitute the practice of law in violation of Supreme Court Rule 65(F) (134 Ill. 2d R. 65(F)), or be deemed to compromise a judge's duty to minimize the risk that extrajudicial duties conflict with her judicial duties in violation of Rule 65(C) (134 Ill. 2d R. 65(C)).

A 1994 advisory opinion from the Illinois Judicial Ethics Committee reaffirmed this analysis, stating that "legal responsibility" consists solely of potential financial responsibility for any malpractice action against the recipient of the referral. Illinois Judicial Ethics Committee Opinion No. 94—16, at 2. Although this opinion notes that the ethics committee did not address the propriety of a fee-sharing arrangement if the referral was made in anticipation of the referring lawyer becoming a judge, we find no logic in drawing such a distinction. Our conclusion here, that a judge's "legal responsibility" in reference to a referred case does not involve the practice of law within the meaning of Supreme Court Rule 65(F) (134 Ill. 2d R. 65(F)), is equally applicable whether or not the referring attorney is aware at the time of contracting that she will assume the bench. Accordingly, we conclude that a fee arrangement involving a referring lawyer who later becomes a judge is enforceable as long as it is consistent with Rule 1.5's provisions as to client consent and the assumption of legal responsibility by the referring lawyer.

■ Where, as here, the trial court granted a directed finding in favor of the defendant, a reviewing court must determine whether the trial court erred in deciding that the plaintiff failed to present a *prima facie* case. *Kokinis v. Kotrich*, 81 Ill. 2d 151, 155, 407 N.E.2d 43 (1980). To establish a *prima facie* case, the plaintiff must present at least some evidence to support each element essential to her cause of action. *Illinois Health Care Ass'n v. Wright*, 268 Ill. App. 3d 988, 995, 645 N.E.2d 1370 (1994). If the trial court finds that the plaintiff has not established a *prima facie* case, it should direct a finding in favor of the defendant. *Kokinis*, 81 Ill. 2d at 155. A trial court's decision on this matter will not be reversed on appeal unless it is contrary to the manifest weight of the evidence. *Kokinis*, 81 Ill. 2d at 154.

Thapedi's petition alleged, among other things, that: (1) she and Goldberg entered into a referral fee contract; (2) they signed a separate attorney retainer agreement which was approved by the plaintiffs; (3) the referral contract provided that Goldberg was to pay

Thapedi 45% of the total attorney fees if the case was settled or tried; (4) the court approved a settlement in the instant case pursuant to which Goldberg was paid $200,000 in attorney fees; and (5) despite Thapedi's demands, Goldberg refused to pay her a referral fee. In its answer, Goldberg admitted, among other things, that: (1) it entered into the attorney retainer agreement that provided that Goldberg would pay Thapedi 45% of the total attorney fees if the case was settled or tried; (2) it received $200,000 in attorney fees upon settlement of the instant case; and (3) it had not paid Thapedi a referral fee in this action.

At the evidentiary hearing initiated on June 19, 1995, Thapedi identified her agreement with Goldberg and affirmed that it was entered into on or about December 4, 1992, before she was sworn in as a judge later that month. She acknowledged that she could not practice law after assuming the bench, but said that she remained "a person who would be responsible for any litigation that might arise (on the referred cases) as a result of either malfeasance, malpractice or anything else."

Although Thapedi does not specifically use the words "breach of contract," her petition set out sufficient factual allegations to establish such a claim. See *Klem v. Mann*, 279 Ill. App. 3d 735, 740-41, 665 N.E.2d 514 (1996) (a claim for breach of contract is established by alleging that a contract existed between the parties, the plaintiff substantially performed its obligation under the contract, the defendant breached the contract, and the plaintiff was damaged by the breach). Furthermore, our review of the record leads us to conclude that Thapedi sufficiently established a *prima facie* case as to her entitlement to referral fees under the agreement and in conformance with Rules 1.5(f) and (g) (134 Ill. 2d Rs. 1.5(f), (g)). The referral fee contract and the attorney retainer agreement, both admitted into evidence, together with Goldberg's admissions in its answer, provided support for each element of her cause of action.

Since Thapedi presented evidence sufficient to form a *prima facie* case, the burden of production then shifted to Goldberg to come forward with evidence to establish the affirmative matter set forth in its answer. Therefore, the trial court erred in directing a finding and entering judgment in favor of Goldberg.

For the foregoing reasons, we reverse and remand this action to the circuit court of Cook County for further proceedings consistent with this opinion.

Reversed and remanded.

CAHILL and O'BRIEN, JJ., concur.