In re Loveless BABIES, Jr., and Alma Bernice Babies, Debtors.

No. 03–82383.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Sept. 30, 2004.

J. Eugene Wilson, East Point, GA, American Bankruptcy Counselors, Law Offices of Donald M. Leibsker, Richard D. Grossman, The Law Group, Ltd., Chicago, IL, for Debtors.

## MEMORANDUM OPINION

PAUL W. BONAPFEL, Bankruptcy Judge.

Loveless and Alma Babies (the "Debtors") retained two lawyers practicing bankruptcy law in Chicago, Illinois, with regard to the filing of their joint chapter 7 case in Atlanta. Debtors were referred to these lawyers by a credit counseling service that they contacted, one of many such entities that refer potential bankruptcy clients to the lawyers, often for compensation.

The two attorneys, Donald Leibsker (and his law firm, American Bankruptcy Counselors ("ABC")) and Richard D. Grossman (and his law firm, the Law Group, Ltd.) (collectively, the "Chicago Attorneys"), are licensed to practice in the State of Illinois and are admitted to the bar of the United States District Court for the Northern District of Illinois but are not members of the State Bar of Georgia or of the United States District Court for the Northern District of Georgia. After obtaining information from Debtors and preparing a draft of papers for the bankruptcy filing, the Chicago Attorneys arranged for Debtors to meet with Mr. J. Eugene Wilson, a member of the State Bar of Georgia and of this Court, who filed the case for the Debtors and appeared as their sole counsel of record.

In connection with proceedings not material here, the Court discovered that Debtors had paid a $1,000 fee for legal services in connection with this case that was shared by the Chicago Attorneys and Mr. Wilson. The Court *sua sponte* ordered that the lawyers appear at hearings to address the Court's concerns about whether they had adequately disclosed the particulars of their fee sharing agreement as required by Rule 2016 of the Federal Rules of Bankruptcy Procedure, whether the Chicago Attorneys had engaged in the unauthorized practice of law in this State and had practiced law in this Court without being admitted to its bar, whether their sharing of compensation was proper, and whether all or any part of their fee should be disgorged under 11 U.S.C. § 329.

Under the facts of this case, the Court concludes that, unless the Chicago Attorneys are admitted to practice in this Court *pro hac vice*, they are engaging in the unauthorized practice of law in Georgia and the unauthorized practice of law in this Court such that they could not lawfully provide legal services to Debtors or share fees with local counsel. Because the Chicago Attorneys have evidenced a good faith intention to practice in compliance with applicable legal and professional standards and because they are qualified for *pro hac vice* admission, the Court will deem them admitted in this case. Consequently, no sanctions or further disciplinary proceedings are necessary, and the Court will not require disgorgement of the otherwise reasonable fee paid by Debtors who obtained an acceptable result in this case.

## I. FACTS

The facts are not disputed. Faced with financial difficulties, Mr. Babies contacted a credit counseling service. The credit counseling service advised Mr. Babies that he should consider filing bankruptcy and referred him to ABC, Mr. Leibsker's firm. The Chicago Attorneys do not recall the particulars of the referral, but they admit that they pay a fee for at least half of their referrals. They often pay a fee to the referring entity whether or not the referred person calls or becomes a client.

Mr. Babies called ABC and received a form questionnaire to complete and return. The Chicago Attorneys represent that Debtors signed a standard "American Bankruptcy Counselors/Client Agreement" (the "Client Agreement") and returned the questionnaire. The Chicago Attorneys then prepared the petition, schedules, and statement of affairs, sent the papers to Mr. Wilson, and advised the Debtors to call Mr. Wilson. Mr. Wilson met with the Debtors, reviewed the bankruptcy papers, requested some revisions that the Chicago Attorneys made, and filed the revised petition and papers that the Debtors had signed.

The attorneys' disclosure statement filed pursuant to Rule 2016 disclosed that the $1,000 attorneys' fee was to be shared and that all of the attorneys had agreed that each "will remain responsible for completion of the legal work involved in this matter and responsible for the legal work of each." All three lawyers signed the Rule 2016 disclosure statement, but Debtors did not; the Chicago Attorneys contend this was an oversight and point out that the Client Agreement contemplated that, after ABC prepared the bankruptcy papers, Debtors would meet with a local lawyer to advise them as to local law, review the papers, file the case, attend the § 341 meeting, and represent them with regard to certain matters in the case.

Neither the Rule 2016 disclosure statement nor the Client Agreement reflects which lawyers get how much of the fee. The Rule 2016 disclosure statement shows that Mr. Grossman and his firm will share in the fee; the Client Agreement does not mention him, however, and neither document describes the services that he and his firm are to provide. Documents exchanged between Mr. Wilson and Mr. Leibsker show that Mr. Wilson got $250 and the Chicago Attorneys got $750. The record does not reflect how the Chicago Attorneys divided their $750. The division of fees takes place without regard to the amount of work that each of the three lawyers performs.

In one paragraph of the Rule 2016 disclosure statement, the three attorneys represent that they have agreed, in exchange for the $1,000 fee, to "render legal services for all aspects of the bankruptcy case." Another paragraph, however, states that the fee does not include "representation of

the debtor in adversary proceedings and other contested bankruptcy matters." In addition to the fact that these two paragraphs are inherently contradictory, the undertaking in the former paragraph to render legal services for "all aspects of the bankruptcy case" for the $1,000 fee conflicts with terms of the Client Agreement that expressly limit the scope of the representation by excluding services such as defense of any complaint to deny a discharge, prosecuting any complaint to determine dischargeability of a debt, converting a case from chapter 7 to 13 or from chapter 13 to 7, representation concerning any reaffirmation matters that are not resolved at the conclusion of the § 341 meeting, filing of motions to avoid liens, and amendments to add a creditor. These excluded services required an additional fee. The Chicago Attorneys candidly acknowledge that they did not discuss with Debtors the implications of limitation of scope of the representation.

▮ Although not the focus of this Opinion, the Court notes that the foregoing facts give rise to several concerns relating to the limitation on the scope of services that the attorneys were obligated to provide. First, the attempted limitation of services as set forth in the Client Agreement is clearly not permissible in these circumstances under standards of professional conduct applicable in this and other courts. Among other things, the limitation is not permissible because the attorneys did not consult with Debtors about it and because it excluded legal services that are essential to the objectives of the representation. *In re Egwim*, 291 B.R. 559, 569–573 (Bankr.N.D.Ga.2003); *see, e.g., In re Castorena*, 270 B.R. 504, 523–30 (Bankr.D.Idaho 2001). The most glaring example is the exclusion of services concerning reaffirmation agreements not made by the time of conclusion of the

§ 341 meeting. In view of Debtors' stated intention to reaffirm two car loans and their residential mortgage and the fact that they could not reaffirm these debts without their attorney's review as required by 11 U.S.C. § 524(c)(3), the lawyers could not properly limit legal services with regard to these reaffirmations that clearly were a critical objective of the representation. Second, the limitation of services is not properly disclosed in accordance with Rule 2016. Third, it is arguable that a court could construe the disclosure statement against the attorneys who drafted it and hold that the attorneys were obligated to provide all services in the bankruptcy case for $1,000 including even, for example, litigation of a discharge or dischargeability matter. Nothing would *require* the attorneys to agree to such an undertaking; the agreement could of course provide for additional fees for certain described services or for any services that are not described. *Egwim, supra,* at 573. Fortunately, such issues did not arise in this case because Debtors received their discharges as a matter of course and there were no complaints seeking a dischargeability determination.

## II. Requirement of *Pro Hac Vice* Admission

The Chicago attorneys contend that they do not have to be admitted to the State Bar of Georgia or to the bar of this Court in order to provide legal services to the Debtors in connection with this case because they associated with local counsel who is so admitted. They also justify their activities on the theory that they are engaged in a fee-sharing arrangement with local counsel that is permissible for all of them under the professional standards applicable in their respective jurisdictions. The Court concludes that, under the circumstances of this case, the only way for the Chicago Attorneys to lawfully repre-

sent Debtors in connection with this case and receive compensation for such services is to be admitted to the bar of this Court *pro hac vice.*

## A. Unauthorized Practice of Law and Admission to the Court's Bar

 A person must be a member of the State Bar of Georgia in order to lawfully provide legal services in Georgia. O.C.G.A. § 15–19–51(a)(4), (6); Rules and Regulations for the Organization and Government of the State Bar of Georgia, Rule 1–203. Rule 1–203 provides in pertinent part:

No person shall practice law in this State unless such person is an active member of the State Bar of Georgia in good standing; except as provided below:

(1) A person who is not a member of the State Bar of Georgia, but who is licensed to practice in a state or states other than Georgia, and is in good standing in all states in which such person is licensed, may be permitted to appear in the courts of this state in isolated cases in the discretion of the judge of such court.

In particular, persons practicing bankruptcy law in Georgia are subject to its rules of professional responsibility, *In re Thomson,* 266 Ga. 157, 464 S.E.2d 818 (1996); *In re Bingley,* 262 Ga. 31, 415 S.E.2d 901 (1992), and persons providing legal services with regard to bankruptcy matters without a license are engaged in the unauthorized practice of law. *In re Martin,* 40 B.R. 695 (Bankr.N.D.Ga.1984); *Vaid v. State,* 165 Ga.App. 823, 302 S.E.2d 631 (1983).

 Georgia's exercise of authority in this regard is consistent with the general principle that the states may regulate and license the practice of law even if the legal services involve matters of federal law. *See Maternally Yours, Inc. v. Your Mater-*

*nity Shop, Inc.,* 234 F.2d 538, 541 n. 1 (2d Cir.1956); *In re Peterson,* 163 B.R. 665, 673–75 (Bankr.D.Conn.1994). To this general rule there is a limited exception: A person may provide services that a state validly characterizes as the practice of law without being admitted to the state's bar if the services relate to matters in a federal forum before which the person is authorized to practice. *Sperry v. Florida ex rel. Florida Bar,* 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963).

The majority and dissenting opinions in *Rittenhouse v. Delta Home Improvement, Inc. (In re Desilets),* 291 F.3d 925 (6th Cir.2002), illustrate two competing views as to the applicability of the foregoing exception to the bankruptcy practice of a lawyer admitted to the bar of a federal bankruptcy court located in a state in which the lawyer is not admitted to that state's bar. In *Desilets,* a lawyer licensed in Texas had been admitted to the bar of the United States District Court for the Western District of Michigan and established a practice limited to bankruptcy matters in federal court in Michigan without being admitted to the State Bar of Michigan. The Michigan bankruptcy and district courts ruled that the lawyer was engaged in the unauthorized practice of law, required him to return fees, and indefinitely suspended him from practice in the bankruptcy court. *Id.* at 927.

The Sixth Circuit reversed. Concluding that federal standards govern practice in federal courts and that state laws cannot limit practice in federal courts, the majority ruled that, because the lawyer had been duly admitted to practice in the bankruptcy court, he did not have to be admitted to the bar of the state in which the court sat in order to practice bankruptcy law there. *Id.* at 930–31. Disagreeing, the dissenting opinion concluded that the bankruptcy court and district court could properly in-

terpret their own rules to forbid routine practice in the bankruptcy courts in Michigan by a lawyer not licensed to practice in Michigan. *Id.* at 931.

The Court need not choose between these two views in order to determine the issues in this case. The premise of the majority view in *Desilets* is that state licensing requirements cannot restrict the practice of law concerning matters in a federal court in the state by a lawyer *admitted to the bar of that federal court.* Because the Chicago Attorneys are not members of the bar of this Court, there is no basis for excepting them from Georgia's requirements governing the practice of law even if *Desilets* makes an exception available.

 The Chicago Attorneys contend, however, that Georgia's licensing requirements do not apply to their activities because local counsel, not they, signed and filed the petition and actually provided representation to Debtors in this Court. Their contention does not properly state the issue. A person providing legal services for a debtor filing a bankruptcy case in Georgia cannot avoid Georgia's requirements merely by associating an admitted lawyer. The retention of local counsel does not grant authority to the Chicago Attorneys to render legal services in bankruptcy cases to whatever Georgia residents they solicit through their referral program. More accurately stated, the issue is whether the activities of the Chicago Attorneys constitute the practice of law in Georgia.

The Chicago Attorneys did not come to Georgia in connection with their representation of Debtors in this case until they appeared in response to the Court's order. Nevertheless, the circumstances of this case demonstrate that they intended to, and did, provide legal services in this state.

The operation of the Chicago Attorneys' referral program shows plainly that they intended to provide legal services to residents of Georgia with regard to bankruptcy matters in Georgia on an "all comers" basis. Their referral program, through which they acquired Debtors as clients, targets financially distressed individuals in Georgia and other states; through it, the Chicago Attorneys hold themselves out as being ready, willing, and able to provide legal services to residents of such states, including Georgia, in connection with the filing of a bankruptcy petition in the client's state. They delivered their legal services to their clients in Georgia by way of telephone and the United States mail.

The subject of the representation was a bankruptcy case that obviously was to be filed in this state, and the representation of the clients necessarily involved issues of Georgia law that are inextricably intertwined with questions of federal bankruptcy law. (For example, issues of critical import to a consumer debtor find their answer in large part in Georgia law, including exemptions, O.C.G.A. § 44–13–100, residential foreclosure, automobile repossessions, and garnishments. The way that state law may dramatically affect the course of a bankruptcy case is aptly illustrated by the fact that a debtor in Georgia has the ability to require turnover of an automobile repossessed, but not sold, prior to the filing of a petition whereas a debtor in Alabama or Florida does not. *Compare Motors Acceptance Corp. v. Rozier (In re Rozier),* 376 F.3d 1323 (11th Cir.2004) (Georgia law) *with Bell–Tel Fed. Credit Union v. Kalter (In re Kalter),* 292 F.3d 1350 (11th Cir.2002) (Florida law) *and Charles R. Hall Motors, Inc. v. Lewis (In re Lewis),* 137 F.3d 1280 (11th Cir.1998) (Alabama law).) Any problems with the legal services in the case would clearly have consequences on the lives of Debtors in Georgia, the state of their residence, determined in the Georgia courts under

Georgia law, if not addressed by this Court.

If the Chicago Attorneys' representation of Debtors in this case is a single, isolated event, it is only because their referral program has not garnered any other clients so far. Their statement that they have provided legal services in bankruptcy matters for over 700 debtors in 47 states clearly demonstrates an intent to represent any Georgia debtors that their referral program solicits.

Everything about the representation involved Georgia—clients, forum, applicable law, eventual consequences—except the location of the Chicago Attorneys and the provision of the Client Agreement requiring arbitration of any disputes in Chicago. In an age of e-commerce and e-mail, the physical location of the attorneys and the metaphysical concept that because they remained in Chicago they rendered legal services there cannot control the actual substance of the representation: The Chicago Attorneys provided legal services in Georgia as fully as if they had hung a shingle across the street from the courthouse.

■ Because the activities of the Chicago Attorneys constitute the practice of law in Georgia, they are subject to its rules regulating the practice of law. Because they are not members of the State Bar of Georgia, the only way that they may legally provide legal services to Debtors in connection with their bankruptcy case is to be admitted to practice before this Court.

■ Admission to practice before this Court requires admission to the bar of the United States District Court for the Northern District Of Georgia. Bankruptcy Local Rule ("BLR") 2090–1. Unlike the rules of the Michigan district court in *Desilets,* the rules of the Northern District require membership in the State Bar of Georgia as a condition to being admitted to its bar. Civil Local Rule ("LR") 83.1(A). This requirement is clearly permissible. *See Gallo v. U.S. Dist. Court for the Dist. of Arizona,* 349 F.3d 1169 (9th Cir.2003), *cert. denied,* —— U.S. ——, 124 S.Ct. 2420, 158 L.Ed.2d 982 (2004). Although the Chicago Attorneys do not meet this requirement, this Court has the discretion to permit lawyers admitted in other jurisdictions to practice *pro hac vice.* BLR 2090–2. The Chicago Attorneys must, therefore, seek and obtain *pro hac vice* admission to avoid the unauthorized practice of law in Georgia in connection with representation of clients with regard to a case to be filed in this Court.

■ The requirement that the Chicago Attorneys be admitted *pro hac vice* in connection with their representation of Debtors also arises, independently of the requirements of Georgia law just discussed, from the professional obligations of an attorney for a consumer debtor. An attorney providing legal services to a debtor with regard to a bankruptcy case must sign the petition as the debtor's lawyer, appear in the case as the debtor's counsel, attend the § 341 meeting, and represent the debtor in any matters that arise in the case. *E.g., In re Egwim,* 291 B.R. 559, 569–573 (Bankr.N.D.Ga.2003); *Bone v. Judah (In re Josey),* 195 B.R. 511 (Bankr. N.D.Ga.1996); *see, e.g., In re Johnson,* 291 B.R. 462 (Bankr.D.Minn.2003); *In re Castorena,* 270 B.R. 504, 523–30 (Bankr.D.Idaho 2001). Moreover, an attorney cannot prepare legal papers for a client to file *pro se. See In re Mungo,* 305 B.R. 762 (Bankr.D.S.C.2003).

If, as the Chicago Attorneys represent, they provided substantial legal representation—enough to justify their receipt of three-fourths of the fee—they cannot be strangers to their clients' case and must be considered to be co-counsel for Debtors.

In fact, they recognize this by referring to themselves as "participating co-counsel" in written communication with local counsel. (Undated Memorandum on American Bankruptcy Counselors Letterhead to ABC Panel Members from Don Leibsker, Legal Director, and Steve Blutza, Administrative Director [Docket No. 27] ).

■ Indeed, the Chicago Attorneys are properly characterized as *lead* counsel. Representation of Debtors *began* with the Chicago Attorneys after they solicited and obtained Debtors as clients through their referral program. As the representation proceeded, the Chicago Attorneys collected the attorneys' fee to be shared, kept the lion's share of it, initially consulted with Debtors, prepared the initial drafts of the bankruptcy papers, chose local counsel on behalf of the Debtors and directed them to him, made revisions to the bankruptcy papers as requested by local counsel, and gave instructions to local counsel with regard to processing of paperwork and providing copies of same to them. In view of all of this, it is the Chicago Attorneys who represented themselves to Debtors as being capable of taking charge of their bankruptcy case to be filed in this Court and who thereby undertook primary responsibility for the representation.

The Chicago Attorneys steadfastly maintain that they provide effective legal representation to clients such as Debtors and others in similar situations in other states. The Court, for present purposes, accepts the Chicago Attorneys' characterization of the depth and quality of their services as being what they intended to, and did, provide. Notwithstanding the terms of the Client Agreement that attempt to assign to local counsel responsibility for substantially all of the critical functions that are at the heart of effective representation of a consumer debtor (including accuracy of bankruptcy papers, exemption counseling,

attendance at the § 341 meeting, negotiations and approval of reaffirmation agreements, and representation in court), therefore, the Court concludes that the Chicago Attorneys were ultimately responsible for directing and supervising the representation of Debtors in this case and for its outcome. Indeed, such a conclusion is necessary to support their fees as being reasonable. If the Chicago Attorneys' role and responsibilities were as limited as set forth in the Client Agreement such that local counsel had primary and ultimate responsibility for the representation, Debtors would not have needed the Chicago Attorneys to begin with, and it would make little sense to pay for legal services that are not necessary.

Because the Chicago Attorneys are in fact the principal lawyers ultimately responsible for representing Debtors, they must meet the standards of professional conduct that apply to an attorney of record for any consumer debtor. Consequently, they must, at a minimum, sign the petition they prepared and appear as counsel of record in the case Debtors filed on their advice. The only way that the Chicago Attorneys can lawfully meet these responsibilities is to be admitted *pro hac vice;* performing them without such admission constitutes practice in this Court without being admitted that would, of course, subject them to being found in contempt of court.

In summary, unless the Chicago Attorneys are admitted pro hac vice, they are engaged in the unauthorized practice of law in Georgia and are practicing law in this Court without being admitted.

On June 8, 2004, the Supreme Court of Georgia adopted amendments to the Georgia Rules of Professional Responsibility (the "Georgia Rules") relating to multijurisdictional practice. (Order of the Supreme Court of Georgia, June 8, 2004.)

Amended Georgia Rule 5.5(c) permits a non-Georgia lawyer to provide legal services in Georgia on a "temporary basis" on certain conditions, while amended Georgia Rule 5.5(b) prohibits establishing a "systematic and continuous presence" in the state, except as otherwise permitted by the Georgia Rules or other law. (The exception to the prohibition in amended Rule 5.5(b) on "systematic and continuous presence" appears to be limited to authorization under amended Rule 5.5(d)(1) and (2) for a non-Georgia lawyer to provide legal services in this state to the lawyer's employer or that are authorized by federal law or other Georgia law. *See* Comments 5 and 15 to Amended Rule 5.5 ("Except as provided in paragraphs d(1) and (d)(2), a [non-Georgia lawyer] who establishes an office or other systematic or continuous presence in this jurisdiction must become admitted to practice law generally in this jurisdiction.").) Comment 4 to Amended Rule 5.5 notes, "Presence may be systematic and continuous even if the [non-Georgia lawyer] is not physically present here."

Because the Chicago Attorneys did not invoke these new provisions and because the legal services rendered in this case predate their adoption, the Court has not considered their applicability here. Thus, although the Court questions whether the Chicago Attorneys could establish that their activities and the operation of their referral system that solicits clients in Georgia would amount merely to practice in Georgia on a "temporary basis" within the meaning of amended Rule 5.5(c) rather than a prohibited "systematic and continuous presence" prohibited by amended Rule 5.5(b), the Court does not decide this issue. Even if this issue is resolved in their favor, however, their responsibility as co-counsel would still require that they appear as attorney of record in the case and, as such, obtain *pro hac vice* admission.

## B. Fee Sharing

The Chicago Attorneys also argue that their activities may be justified as a matter of fee-sharing that is permissible under the professional standards applicable to them in Illinois and to local counsel in Georgia. The Georgia Rules of Professional Conduct apply in the District Court and the Bankruptcy Court. L.R. 83.1(C); BLR 2091–1. Moreover, the agreement must be permissible under the Georgia Rules for local counsel to meet his professional responsibilities.

Georgia Rule 1.5(e) provides:

A division of a fee between lawyers who are not in the same firm may be made only if:

(1) the division is in proportion to the services performed by each lawyer or, by written agreement with the client, each lawyer assumes joint responsibility for the representation;

(2) the client is advised of the share that each lawyer is to receive and does not object to the participation of all the lawyers involved; and

(3) the total fee is reasonable.

■ Passing the question of whether the requirement of Georgia Rule 1.5(e)(1) that Debtors agree to the arrangement in writing has been met, the Court concludes that the fee-sharing arrangement here does not meet more fundamental and substantive requirements of the Rule in the absence of *pro hac vice* admission. (If Debtors had signed the Rule 2016 Disclosure Statement, the requirement of a writing would have been met, but they did not. The Chicago Attorneys contend that this was an oversight and that, in any event, Debtors signed the Client Agreement that contemplates sharing of the fee with local counsel.)

Georgia Rule 1.5(e)(1) requires that all fee-sharing attorneys participating in the fee-sharing assume "joint responsibility" for the representation if the fee is not shared in proportion to the work performed. In this regard, the lawyers stated in their Rule 2016 disclosure statement, "Each [lawyer] will remain responsible for the completion of the legal work involved in this matter and responsible for the legal work of each." This would imply that the Chicago Attorneys and local counsel are jointly and severally responsible for representing Debtors. If the Chicago Attorneys are jointly responsible for representing the Debtors in this case, it is axiomatic that they must be admitted to the bar of this Court. They can scarcely assume responsibility for representation in the case if they cannot appear.

The Chicago Attorneys, however, argue that the requirement of "joint responsibility" means only that they must be financially responsible for the legal representation, citing *Elane v. St. Bernard Hosp.*, 284 Ill.App.3d 865, 220 Ill.Dec. 3, 672 N.E.2d 820 (1996). In that case, the referring lawyer referred several personal injury matters to another lawyer shortly before becoming a judge, which precluded any further ability to handle the referred matters. The court permitted the judge to share in the fees under Rule 1.5(g) of the Illinois Rules of Professional Conduct, which governs fee-sharing where the primary service performed by one lawyer is the referral of the client to another lawyer. The court concluded that the judge's continued financial responsibility for the outcome of the litigation met the requirement of Illinois Rule 1.5(g)(2) that the referring lawyer assume "the same legal responsibility for the performance of the services in question as would a partner of the receiving lawyer." *Id.* at 870, 220 Ill.Dec. 3, 672 N.E.2d at 824.

The *Elane* analysis does not apply here. First, Georgia does not have a rule like the one construed in *Elane*. Even if Georgia had such a rule, it would not apply here because it is clear that the services provided by the Chicago Attorneys were far more than merely a referral. Indeed, if the primary service of the Chicago Attorneys was only referral to a Georgia lawyer, a fee of $750 for such service would not be reasonable under 11 U.S.C. § 329. The joint responsibility that the Chicago Attorneys had to assume in order to comply with Georgia Rule 1.5(e) is not limited to financial responsibility.

In any event, compliance with the fee sharing rules does not result in an exception to the rules governing the practice of law in Georgia and in this Court discussed above. Regardless of whether the Chicago Attorneys were *required* to assume responsibility for the representation that would mandate their admission to the bar of this Court, the fact is that they *did* assume that level of responsibility. As such, *pro hac vice* admission is required.

### III. REMEDY

There are several consequences for the Chicago Attorneys if they are not admitted *pro hac vice*. First, without being able to lawfully provide services in connection with the case, they would not be entitled to compensation and would be required to disgorge the fee they received. Second, they would be engaged in the unauthorized practice of law in Georgia. Third, by proceeding to represent Debtors in connection with this case without being admitted, they would be in contempt of court for practicing law in this Court without being admitted to its bar.

The Chicago Attorneys have represented to the Court that they want to comply with the Court's determination concerning the necessity of *pro hac vice* admission, that they proceeded in the good

faith belief that their activities were in accordance with applicable standards, that they received legal advice from counsel with expertise in professional and ethical matters that their conduct was proper, and that they desired to be admitted *pro hac vice* if the Court determined that it was necessary. At the hearing, the Court accepted these representations and determined that the Chicago Attorneys would be deemed to be admitted *pro hac vice* in view of their representations, their good standing as members of the State Bar of Illinois and their admission to the bar of the United States District Court for the Northern District of Illinois, and the fact that Debtors appear to have obtained adequate representation in this case. Because the Court deems the Chicago Attorneys to be admitted *pro hac vice,* the Chicago Attorneys have satisfied the Court's concerns with regard to unauthorized practice of law in the State of Georgia and in this Court, and there is no need for further disciplinary or other proceedings. The Court also concludes that there is no basis for the disgorgement of attorneys' fees in this case, it appearing that the fees charged are otherwise within the range of fees charged in comparable cases in this Court. In reaching these conclusions, the Court is expressly relying on the representation of the Chicago Attorneys that in the future they will not provide legal services or representation to a debtor with regard to any bankruptcy case to be filed in this district without being admitted as a member of the bar of the District Court or *pro hac vice.*

The decision that the Chicago Attorneys may properly be admitted in this case does not mean that they will be entitled to *pro hac vice* admission as a matter of course in any future case. The Local Rules permit *pro hac vice* admission in the discretion of the Court. The question of whether the Chicago Attorneys' activities in Georgia

should preclude *pro hac vice* admission was not raised in this case, and, therefore, the Court makes no determination with regard to that issue, which remains open for consideration in future cases should the need arise.

## IV. ADDENDUM

The Court adds this addendum to point out what this opinion does and does not address. It *does* address the situation of representation of an individual debtor in a consumer case by out of state counsel, unadmitted in the forum state or the forum court, whose only nexus with the forum is a referral by a nonlawyer service provider contacted by debtors residing in the forum state.

It *does not* address representation of a sophisticated, experienced, and knowledgeable client requiring legal services, possibly in multiple jurisdictions, relating to its business, or a client seeking bankruptcy representation in a matter of sufficient complexity, magnitude, or importance to justify selection of counsel with nationally or regionally recognized skills, experience, or reputation that may not be readily available in the forum state. It does not deal with representation of a debtor, trustee, examiner, or committee by special counsel employed to litigate in a court other than the bankruptcy court in which the case is pending.

Nor does the opinion establish the same rule for all circumstances involving collaboration between licensed in state counsel and unadmitted out of state counsel. It makes some sense for a lawyer admitted in her home state to lawfully provide legal services to a resident of the home state with regard to a matter in another state and to charge a fee for doing so, even if out of state counsel is associated to handle the matter. The Court does not have to agree with the arguably unfair result to

the client in *Norris v. Kunes,* 166 Ga.App. 686, 305 S.E.2d 426 (1983), for the Court to accept its holding to that effect. It may also make sense for a lawyer who represents a client in her home state to provide services relating to a matter in another state herself, without being admitted in the forum state, when she does not appear in proceedings in the other state. *See Fought & Co. v. Steel Engineering & Erection, Inc.,* 87 Hawai'i 37, 951 P.2d 487 (1998); *Estate of Condon,* 65 Cal.App.4th 1138, 76 Cal.Rptr.2d 922 (Cal.Ct.App. 1st Dist.1988). And it may make sense for a lawyer in Georgia handling a bankruptcy matter in Georgia to obtain advice on bankruptcy law from an out of state lawyer, who does not thereby engage in the unauthorized practice of law in Georgia. *See Cowen v. Calabrese,* 230 Cal.App.2d 870, 41 Cal.Rptr. 441 (Cal.Ct.App. 5th Dist. 1964). It may even make sense for a Georgia resident to desire to retain counsel from another state to represent the client in a matter in Georgia because of the lawyer's particular skills, experience, reputation, or an existing personal or professional relationship, *when the lawyer will come to the state and handle it.* In each of these circumstances, there is an original nexus between a client and a lawyer licensed to practice in the client's state or, in the last example, a lawyer who expects to come to the state and handle it. There are valid arguments that such arrangements should be permissible and that lawyers in such circumstances should be able to provide services a client requests without offending prohibitions on the unauthorized practice of law. *But see Birbrower, Montalbano, Condon & Frank v. Superior Court,* 17 Cal.4th 119, 949 P.2d 1, 70 Cal. Rptr.2d 304 (1998).

But it is an entirely different matter when a client in Georgia seeks legal services that are to be provided with regard to a matter in Georgia and out of state

counsel does not intend to set foot in the state, to meet personally with the client, or to be admitted to the court in which the matter will necessarily be filed. The distinctions from the circumstances in the preceding paragraph are even more compelling in this case, where Debtors' retention of legal counsel did not arise out of a conscious choice of the Chicago Attorneys because of their particular skill, experience, reputation, or existing relationship, but because of a referral, very probably paid for by the Chicago Attorneys, from a nonlawyer. If an out of state lawyer's services in these circumstances are substantial enough to justify the client's retention of the lawyer, the lawyer must be authorized to practice law in the case that results.

## V. CONCLUSION

For reasons set forth above, the Chicago Attorneys may not lawfully represent Debtors in connection with this case without being admitted to the bar of this Court *pro hac vice.* Because the Court will exercise its discretion in the circumstances of this case to deem the Chicago Attorneys to be so admitted and because the fee paid by Debtors is otherwise reasonable, the Court concludes that no disgorgement of fees is required and that no further disciplinary or other proceedings with regard to the representation are necessary.